# Exhibit 16

I, Juan Edward Castillo, hereby make the following declaration under Texas Civil Practices and Remedies Code Chapter 132.

San Antonio (Texas) Police arrested me on December 10, 2003. Vincent D. "Denny" Callahan was appointed as my first chair defense counsel. In the over 20 months from the time of my arrest until after I was sentenced, Mr. Callahan saw me at the jail only once. The sole visit was on December 12, 2003. This one visit occurred before he had conducted discovery in the case.

I, Juan Edward Castillo, TDCJ No. ███████ ████████████████████ ████████████████████████████████ declare under penalty of perjury that the foregoing is true and correct.

Executed this _9th_ day of October, 2009.

JUAN EDWARD CASTILLO

# Exhibit 17

2004 CR 1461 A
Denny Callahan

Notified 1/21/05

Dear Honorable Judge Teresa Herr,

Hi. My name is Juan Cortez, & I am writing this letter to ask you if you would grant my motions, motion for a bond reduction, & motion to dismiss appointed counsel. Right now my bond is $500,000.∞ & I am in a high bond unit here in jail, & because of that I am not allowed to attend educational classes or church services. I do not have a high school diploma or G.E.D. so cld like to use this time being incarcerated to get my G.E.D. I was told by a classification officer that if my bond was lowered to any amount under $150,000.∞ I could be moved to general population & attend any & all classes cld like. On April 1, 2004, I was sentenced to 78 months for a federal case I have so I have a federal detainer & will not be able to post bond no matter how low it would be so I'm not a flight risk. & about my motion to dismiss appointed counsel. cld like to dismiss my court appointed attorney Vincent Callahan because I have only seen him twice in the past 13 months. Once was in December of 2003 & the last time was in your courtroom on 1-6-2004. I also feel he is not helping me. I had asked Mr. Callahan to put a motion to dismiss appointed counsel & he responded with "The law permits you to retain any lawyer of your own choosing but it does not permit you to choose who your court appointed attorney is. I will stay in touch." I understand that I do not get to choose which attorney I want to represent me, if they are court appointed. I was under the impression that I can hire a court appointed attorney if I felt that they were

nt helping me. Well, your Honor I hope you will take this in to consideration upon making your decision. Thank you for taking the time to read my letter. Take care & God Bless.

Sincerely,

Joan Castillo ▮▮▮▮▮

▮▮▮▮▮▮▮▮

BCADC

SAN ANTONIO, TX.

▮▮▮▮▮

JUAN CASTILLO
SAN ANTONIO, TX.
78207

LEGAL!
MAIL.

U.S. POSTAGE

SAN ANTONIO, TX
2004 00370 0354
IFP0540590 JUN01

MAILED FROM THE
BEXAR COUNTY JAIL

TO: THE HONORABLE JUDGE TEIRESA HEER
DISTRICT COURT 186IH
BEXAR COUNTY COURTHOUSE
SAN ANTONIO TX.

78205+3038 11

# Exhibit 18



Denny Callahan

6/9 Notified

CAUSE NO. 2004 CR 1461 A

| | |
|---|---|
| THE STATE OF TEXAS | IN THE DISTRICT COURT |
| VS. | 186th JUDICIAL DISTRICT |
| Juan Castillo | BEXAR COUNTY, TEXAS |

---

## MOTION TO DISMISS APPOINTED COUNSEL

---

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now _Juan Eduardo Castillo_, Defendant in the above-styled and numbered cause, and moves the Court to dismiss _Vincent Callahan_ as appointed attorney of record for Defendant, and in support of this motion would show the following:

I.

The Defendant stands charged with the felony offense of _Capital Murder_, in violation of Section _19.03_ of the Texas Penal Code, which cause is pending before this Court.

II.

That _Vincent Callahan_ was appointed as attorney of record on the _11th_ day of _December_, 2003.

III.

That appointed counsel has failed to file the appropriate and requested pre-trial motions necessary to the adequate and reasonable defense to the charge pending against Defendant herein.

IV.

Defendant has lost faith in counsel and no longer trusts counsel's advice.

V.

That as a result of the attitude and performance of said counsel, there now exists an irreparable, antagonistic relationship between Defendant and appointed counsel, and if Defendant is obliged to stand trial herein with the representation of said counsel, he will be denied a fair trial; will have ineffective assistance of counsel, and will be denied his basic constitutional rights. Defendant will also be denied due process and equal protection under the law pursuant to Amendments Five, Six and Fourteen to the Constitution of the United States; pursuant to Article 1, Sections 10, 19 and 29 of the Constitution of the State of Texas; and, pursuant to Article 1.05 of the Texas Code of Criminal Procedure.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays the Court dismiss ___Vincent Callahan___ as the attorney of record herein. Defendant further prays the Court appoint new counsel to represent Defendant in this cause.

Respectfully submitted,

_____Juan Castillo_____
Defendant

# CERTIFICATE OF SERVICE

I hereby certify that on this the _2nd_ day of _June_ _2005_, a true and correct copy of the above and foregoing Motion to Dismiss Appointed Counsel was transmitted to the office of the Bexar County District Attorney, Criminal Justice Center, 300 Dolorosa, San Antonio, Texas 78205.

_____Juan Castillo_____
Defendant

# Exhibit 19

## Vincent D. Callahan
### Attorney
Laurel Heights Station



January 9, 2004

Juan E. Castillo
Bexar County Adult Detention Center

RE:   *State of Texas v. Juan E. Castillo*, No. MC927854
186th Judicial District Court, Bexar County, Texas

Dear Mr. Castillo:

On 1/6/04 the prosecutor indicated to me that your case would be presented within a month to the grand jury for likely indictment of capital murder.

On this same date one of the lawyers for the other male accused in this case indicated to me that he was attempting to reach a plea bargain agreement part of which would include full cooperation with the prosecutor's investigation.

After I am permitted to review the State's evidence file I will report same to you. After you are indicted I will request the appointment of a mental health expert to examine you.

Do not make any statements to anybody about your case. I will stay in touch.

Sincerely,

Vincent D. Callahan
VDC/ar

Juan Castillo                                          Page 2
January 9, 2004


Cc:

Bill Harris, Esq.

# Exhibit 20



# Vincent D. Callahan
## Attorney
### Laurel Heights Station

February 27, 2004

Juan E. Castillo
Bexar County Adult Detention Center

San Antonio TX

      RE:   *State of Texas v. Juan E. Castillo*, No. MC927854
              186th Judicial District Court, Bexar County, Texas

Dear Mr. Castillo:

      I received your letter postmarked 2/25/04. Please tell me what amount of money, and from what source, is available for an appearance bond so that I might then ask the Trial Judge for an appearance bond in that amount.

      I have carefully noted the time line presented in your letter; we will work on this in greater detail later.

      We will not be given copies of everyone's statement but I will be allowed to make extensive notes from them. I will give these notes to you after they are made. The offense date is alleged to have occurred on 12/3/03. Please send me an hour for hour (24 hours) recordation on what you did on that date. December 3, 2003 was a Wednesday. Also calculate 12/2/03 and 12/4/03 in like manner. I will stay in touch.

Sincerely,

Vincent D. Callahan
VDC/ar
Cc:   Bill Harris, Esq.

# Exhibit 21

# Vincent D. Callahan
## Attorney
Laurel Heights Station

▌████████████

"SB 7 CONTACT LETTER"

memo   12-11-03, 4:30 PM
  to   Juan Castillo  ████████
from   V. D. Callahan
  re   MC 927854; Capital Murder

- I have been appointed to defend you.
- Do not make any statements to anyone.
- Your 1st pre-indictment setting is at 9:00 A.M., 1-6-03, 186th Dist. Ct.
- I will visit with you very soon
- I will schedule a conference with the state for discovery purposes.
- I will stay in touch

Vincent D. Callahan

# Exhibit 22

CAUSE NO. ~~2004-CR-8104~~ *2004-CR-1461-A*

| | | |
|---|---|---|
| STATE OF TEXAS, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | *181st* |
| | § | ~~226TH~~ JUDICIAL DISTRICT |
| V. *Juan Castillo* | § | |
| ~~JOE LOUIS CUELLAR,~~ | § | |
| Defendant | § | BEXAR COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes above named incarcerated defendant, by and through his undersigned attorney on appeal, pursuant to Rule 21.3(h), Texas Rules of Appellate Procedure, to request that this court enter an order granting him a new trial where the verdict is contrary to the law and the evidence.

Respectfully Submitted,

*VBC etc.*

_____
PHILIP EARL JONES

San Antonio, TX 78205

*court appointed* Attorney for Appellant

12/15/2003 5:05 PM  FROM: Fax  TO: 210-737-3404  PAGE: 003 OF 004

STATE OF TEXAS          §

                       §          SWORN AFFIDAVIT
COUNTY OF BEXAR        §

        I, Vincent D. Callahan, undersigned attorney of record for ~~Duane~~ *Juan*

~~Curtis King,~~ *Castillo* do hereby swear that the foregoing Defendant's Motion for

New Trial is true and correct.  ~~On 12/9/03 I did not fully apprise my client~~

~~that not withdrawing his guilty plea in the 290ᵗʰ District Court, Bexar~~

~~County, Texas would likely necessarily result in his being incarcerated in the~~

~~other above felony cases.~~


                            _____
                            VINCENT D. CALLAHAN

        SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned *2005*

authority, by Vincent D. Callahan on this the _____ day of December, ~~2003.~~


                            _____
                            Notary Public
                            In and for the State of Texas
                            My Commission Expires: _____



                                    3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Defendant's Motion for New Trial has been mailed or hand delivered to the Appellate Section of the Office of the District Attorney, Bexar County Justice Center, 300 Dolorosa, San Antonio, Texas 78204 on this _____ day of _____, 2005.

_____
PHILIP EARL JONES

## ORDER

On this the _____ day of _____, 2005 came on to be heard Defendant's Motion for New Trial and said Motion is hereby

(GRANTED)          (DENIED)

Signed and entered this _____ day of _____, 2005.


_____
JUDGE PRESIDING

9/5/2006 4:14 PM  FROM: Fax   TO: 210-737-3404   PAGE: 001 OF 003

NO. 2004-CR-1461-A

| | | |
|---|---|---|
| STATE OF TEXAS, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| V. | § | 186TH JUDICIAL DISTRICT |
| | § | |
| JUAN CASTILLO, | § | |
| Defendant | § | BEXAR COUNTY, TEXAS |

### DEFENDANT'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes above named indigent and incarcerated defendant, by and through his undersigned court appointed attorney on appeal, pursuant to Rule 21.3(h), Texas Rules of Appellate Procedure, to request that this court enter an order granting him a new trial where the verdict is contrary to the law and the evidence.

Respectfully Submitted:

VINCENT D. CALLAHAN

San Antonio, Texas 78212-9998

Court Appointed Attorney for Appellant

1

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

SWORN AFFIDAVIT

I, Vincent D. Callahan, undersigned attorney of record for Juan Castillo do hereby swear that the foregoing Defendant's Motion for New Trial is true and correct.

_Vincent D. Callahan_
VINCENT D. CALLAHAN

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, by Vincent D. Callahan on this the _6th_ day of _September_, 2005.

_Garcia_
Notary Public
In and for the State of Texas.
My Commission Expires: _6-15-09_

K. GARCIA
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 06-15-2009

2

9/5/2006 4:14 PM FROM: Fax   TO: 210-737-3404   PAGE: 003 OF 003

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Defendant's Motion

for New Trial has been mailed or hand delivered to the Office of the District

Attorney, Bexar County Justice Center, ███████████████████████

this the 6th day of ~~March~~ Sept, 2005.

*Vincent D. Callahan*
VINCENT D. CALLAHAN

## ORDER

On this the _____ day of _____, 2005 came on to be heard

Defendant's Motion for New Trial and said Motion is hereby

(GRANTED)          (DENIED)

Signed and entered this _____ day of _____, 2005.

_____
JUDGE PRESIDING

3

9/5/2006 4:14 PM  FROM: Fax   TO: 210-737-3404   PAGE: 001 OF 003

NO. 2004-CR-1461-A

| | | |
|---|---|---|
| STATE OF TEXAS, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| V. | § | 186TH JUDICIAL DISTRICT |
| | § | |
| JUAN CASTILLO, | § | |
| Defendant | § | BEXAR COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes above named indigent and incarcerated defendant, by and
through his undersigned court appointed attorney on appeal, pursuant to Rule
21.3(h), Texas Rules of Appellate Procedure, to request that this court enter an
order granting him a new trial where the verdict is contrary to the law and the
evidence.

Respectfully Submitted:

VINCENT D. CALLAHAN

Court Appointed Attorney for Appellant

1

STATE OF TEXAS     §
                     §           SWORN AFFIDAVIT

COUNTY OF BEXAR   §

     I, Vincent D. Callahan, undersigned attorney of record for Juan Castillo do

hereby swear that the foregoing Defendant's Motion for New Trial is true and

correct.

                                  _____
                                  VINCENT D. CALLAHAN

     SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority,

by Vincent D. Callahan on this the __6th__ day of __September__, 2005.

                                  _____
                                  Notary Public
                                  In and for the State of Texas.
                                  My Commission Expires: __6-15-09__

K. GARCIA
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 06-15-2009

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Defendant's Motion

for New Trial has been mailed or hand delivered to the Office of the District

Attorney, Bexar County Justice Center, ████████████████████████

this the _6th_ day of ~~March~~ *Sept*, 2005.

VINCENT D. CALLAHAN

## ORDER

On this the ____ day of _____, 2005 came on to be heard

Defendant's Motion for New Trial and said Motion is hereby

(GRANTED)        (DENIED)

Signed and entered this _____ day of _____, 2005.

_____

JUDGE PRESIDING

3

# Exhibit 23

3-9-04, 9:50 a.m. Discovery notes
from review of homicide report,
12 pages of notes

3-9-04, 7:50 A.M., litic.

fed sent — 4-2-04; weapons chg, 63-78 mo.

comp. — Tommy Garcia, 4/M ████████

Act #1 — def, ████████

Act #2 — Francisco Gonzales, ████████

Act #3 — Debra Espinosa, ████████

Wit #1 — Dina Robles, ████████

████████ S.A., TX ████████

████████

Wit #2 — David Robles, ████████

████████ S.A., TX. 7

████████

Wit #3 — John Medlick, ████████

████████ S.A., TX ████████

████████

Wit #4 — George Canales, ████████

████████ S.A., TX. ████████

████████

Comp still wearing silver + gold watch
. gold colored nugget bracelet rt wrist
. small gold col. earring L ear
#450 money clip in lft rear pkt ;
, #1240    "       m'    "

wit #5 - Robert Jimanez, ▓▓▓▓
▓▓▓▓▓▓▓▓▓
S.A., TX
▓▓▓▓▓▓

wit #6 - Frank Russell, ▓▓▓
▓▓▓▓▓▓▓
S.A., TX.
▓▓▓▓▓▓

wit #7 - Mary Lou Garcia, ▓▓▓▓
▓▓▓▓▓▓▓▓
S.A., TX
▓▓▓▓▓▓

wit #8 - James Fenimore, ▓▓▓▓
▓▓▓▓▓▓▓
S.A., TX
▓▓▓▓▓▓

Weather, warm & dry. Lighting conditions
poor. Shooting occurred in the 9700 blk of
Clamp, which is between Villaret & Budawon.
Clamp runs north-south... The comp's
▓▓▓ black Chevy Camaro was parked on

The west side of the st. about mid block.
Both doors were open and both seats
were in the full reclining position.
The keys were not in the ignition.
The passenger window was shattered
and there was glass on the passenger
seat. A single drop of blood was
apparent on the passenger armrest.
A spent 9mm shell casing was found
outside the passenger door in the
leaves. Another spent 9mm shell casing
was found near the left rear quarter
of the Camaro. A trail of 9mm shell
casings led across the st. to the
east side of Clamp where the comp.
expired. When I arrived he was lying
on his back. Officers advised me EMS
had turned him over. The area is very

dark as the block is long and
streetlights are only at the corners
Few houses are in the 9700 blk with
vacant lots comprising most of the
st." Det Timm Angell ███████
1-7-04 @ 1800 report [incident 12-303,
@ 200].

, comp's cell phone + car keys missing
. Espinosa claims innocence to
    1. flight wit's: George Gruber +
                     John Mielick
    2. Rina Robles' sister + bro-in-law
        David Robles
. Espinoza also claims ignorance of susp's
    ID; she fled because she had warrents;
    said comp was her "fucking friend"
. Robert Jimenez, friend earlier with comp.,
    1st found him with Frank Russell
. James Fenimore observes older, 80's model
    small share car turn around in his driveway
    and shoves in — after shots

lt. bl. or silver, Toyota or Datsun

. autopsy — 7 gunshot wounds, 3 in head,
               1 in neck, 1 in ft rt collar
               bone, 2 in back
       — $574.00 in cash in wallet +
         pkts
       — small amt of mariy on comp.

. Off. D. Higgenbotham ████ — observed
  Francisco Martinez Gonzales walking
  nort on Pleasanton Rd 3-4 blks North
  of Buchanon St.; GSR performed.

. ski mask, blk full, found at flea market
  near Maursund Rd & Loop 410

. no FMG statement other than he ran
  because he had drugs + warrants
       . clothing of FMG seized

. on 12-4-03, Debra Espinosa tells Det Angell
  that "it was him" (FMG)
       . also that she agreed with FMG
         to rob somebody; she chose comp.
  because he sells drugs

, Thought only FMG would show;
suppresed a 2 males; can't ID def
or know him
, doesn't know who fired gun

, 2nd ski mask located
, FMG gives statement; doing drugs, then
, robbed by 2 guys (2 others in car);
then hears gunshots
. det's tell him glass fragments
are in his clothing
, then, "That fucking bitch, it was
that whore's idea to do it"
, then other male was Juanito,
friend of Debbie, last name Castillo
, then def went crazy and shot
the comp. during the robbery
, then planned robbery: def, FMG, +
Debbie
. then he did not see shooting, but
neither he nor Debbie had gun

Then the mask he was wearing had bigger holes in front than the one def was wearing (def supplied masks)

. Debbie implicates def who she says she's in love with, but afraid of him. , confirms agreement to rob. , says FMG's wife dropped them off to Debbie's house (w has messed up teeth), for meeting to plan

, def did shooting; always wears a bullet proof vest

. That night def wearing blue latex gloves

. def had blood on his hands after window break & before shots fired

def on fed prob. for bullet proof vest

probably fed. prior convictions + federal

- def. to have called Lucinda Gonzales who
  told her where gun was — could not be
  found

- cell phone of comp. shows extensive activity
  both prior to and after comp's murder
  , 2 outgoing after mur., 12-4-03,
  2031 hrs., 46 sec. to
  ████████████
  , 2nd - incomplete, 36 sec.
  to ████████████ at
  12-10-03    2038 hrs., 12-4-03

- def arrested, refuses statement after
  r's read, wants lawyer present
  . has small healing wound on
  index fingr., rt hand — photo's
  taken
                    to be
  . def arrested on tip, at ████████████
  ████████████
                    . with sev. weapons, cell
                    phone + bullet proof vests
  with:Castillo
  Carlos Ortiz     . but was at ████████████
  Joseph Ortiz
  Jessica Cantu

, 1 AK-47
) Mac-11 9mm
) Winchester Rga Shotgun
, numerous rounds + calibers of ammo
) bullet proof vest
          Carlos Castillo + Joseph
          Ortiz decline statements

. bld drop might be fromdef — inside
passenger's side armrest. (comp
shot outside veh)

, With FMG says, trio observed her
home night of shooting — trio leaves
in red car driven by Debbie

          . Def come by her house next
          day and made admissions about
          murder to FMG's nephew, Brian

                    . Def said he was wearing
                    vest
                    , def said he cut hand on
                    barbwire fence where
                    gun was hidden

. cop suspects N or FMG drove FMG to
robbery; N says she drove him to Debra
                                   Espinosa

, W of FMG says she heard robbery
agreement + planning

. buccal swab of def taken
      SAPD # ███████████

, DNA tests performed
      . def
      : FMG
      . ski masks
      . blood swabs from scene
, Firearms Lab test ⟨ shell casings
                      unfired 9mm
                      from ███████
                      ⟩ autopsy bullets

. comp's father arrested 12-12-03, 2310 hrs for
  unlawfully carrying              to Carlos Castillo ████████

, 12-3-03, 1810 hrs, Debra Espinosa recorded
  from jail calling on 3 way to tell
  Juan not to worry, that she didn't
  tell the police anything. male caller tells
  her not to be talking on the phone

— Comp's phone is a Sanyo cell phone —
says Comp's mom

. Samsung cell phone recovered
at ████████████████
, not Comp's cell phone
— gun + cell phone still missing
— inv. can't find Brian Brown

Conclusion

" On Dec. 3rd, 2003, at approximately
0200 hrs, Tommy Garcia, Jr. was lured
to the ████████████████ by Debra
Espinosa. Espinosa had previously agreed
to engage in this act with the understanding
that Garcia would be robbed. Garcia was
subsequently shot and killed during the
robbery. The actors in the actual robbery
were Juan Castillo and Francisco
Gonzales. Castillo and Gonzales were
arrested and charged with capital murder.
D.E. was arrested and charged with agg
robb... "                    over →

11-16-2004 disc(over) notes from review of DA file,
10 pages of notes.

11-16-04, disc. (Castillo, 9:00 — 12:00

. date of occurrence — ████████████, 12-3-03,
@ 2:00 A.M., between Villaret
+ Buchanon

. Summary of Evid.
Crime Scene Video
Crime Scene Photos
911 Tape
Blood Samples
Fingerprints
(4) spent 9mm Shell Casings
(2) Black Ski Masks
(2) Buccal Swabs
(1) GSR Test Kit
Witness Statements
Voluntary Statements
Officers Reports
Supplemental Reports

. Espinosa heard gunshots, but did not see who
did the shooting; also, did not know either
actor + would not be able to identify them
since faces covered with ski masks.

. Ana Robles, sister of Debora Espinosa, + David
Robles drive back to crime scene after
Espinosa calls 911 from her sister's home
/

. comp's cell phone + car keys missing

. Dina Robles states that she took Espinosa to
their mother's house (526 E. Villaret) to calm
down; that they flagged down a p.o.; that
Espinosa rode with him to scene; that she +
David Robles followed them back to scene

. Dina + David Robles hear Espinosa
state that she didn't know who
did the shooting

. John Medlick, ▮▮▮▮▮▮▮ heard about 2 gunshots;
his roommate, George Gruber, calls 911; that
Espinosa knocks + enters + use telephone, then
Gruber states that Espinosa + he go back to body;
that Espinosa flees; that then two unk. males
arrive at scene + are obviously upset.

. Robert Jimenez states that comp had been with
him + Frank Russell playing videogames; that
comp (Tommy Garcia a/k/a 'JR') leaves with
Frank; that 15 mins later Espinosa calls +
says JR had been shot; that he + Frank drove
to scene in Jimenez's mom's car.

. Frank Russell states that 'JR' dropped him
off at home + then went to pick up
Espinosa; call from Jimenez; comp deceased

2

. comp's Sprint cell phone # ▮▮▮▮▮▮

. James Fenimore tells Det. Timm Angell ▮▮▮
on 12-3-03, 11:20 hrs.; that he heard shots;
looked out window + saw older 80's model
small square car turn around in his driveway
+ drive off; possible Toyota or Datsun,
lt blue or silver; body damage on passenger side
of the veh.; couldn't see driver or occupants

. P.O., P. Higgenbothum ▮▮▮▮ observed F. Gonzales
hurriedly walking North on Pleasanton Rd
3-4 blks north of Buchanon St.;

. P.O., J. Garza #475, broadcasts that a male was
running from him
                    . Gonzales states he ran because he
                      had warrants
                                  . GSR done on hands of
                                    Gonzales, whose previous
                                    arrests are for drugs +
                                    prop. crimes.

on 12-4-03, 1045 hrs.
. Espinoza tells Det. Timm Angell, ▮▮▮▮▮▮ that
she had never met F. Gonzales

3

Then Espinosa says, "ok, it was him, he was there." (Frank Gonzales)— (although she said she didn't know his last name)

Then Espinosa gives 2nd interview to Det. Timm Angell #████; that Frank robs people; Franks' idea to plan robbery; picks comp for Clamp St. because comp sells drugs + has money; that 2 males wearing ski masks show up + break out windows while she was performing oral sex; that she didn't know other but recognized 'Franks' voice; didn't know who fired the gun; photo IDs Frank; admits agreement to commit robbery

Francisco Martinez Gonzalez, interviewed 12-6-03, 1245 hrs. by Det. Timm Angell, ████
,1st — robbed by 4 guys in car; hears gunshots after; denied involvement; when told that his clothing had glass fragments he hung head + was silent;
,2nd — Then "that fucking bitch, it was that whore's idea to do it"

4

That other male not known well, but was a friend of a girl named Debbie; called him "Juanito" Castillo Espinosa with well groomed goatee who just went crazy and shot the comp. during the robbery; "... I don't need a lawyer, because I didn't shoot anybody"

That Juanito + Debbie met w/ him 'cause they were going to set somebody up + rob them; Gonzales agrees; went in Juanito's gray Cutlass lowrider style veh.; that Juanito gives 2 blk ski masks w/ 3 holes in ft.

, Espinosa leaves w/ comp; later Espinosa performing oral sex on comp; that Castillo breaks pass. window with gun butt; didn't see shooting — but neither he nor Debbie had gun; at gunshots he runs toward flea mkt., turns left, throws his ski mask over fence; IDs Castillo's photo lineup

, 3rd int. of Espinosa by Det. T. Angell on 12-7-03, 1300 hrs — she continues to

5

to deny knowledge of Castillo; then implicates J. Castillo; states that Frank + Juan have been planning on robbing somebody for about 3 days; that Frank's wife dropped Gonzales + Castillo off in lt blue 4-dr car (w had messed up teeth) (car belongs to Frank's wife's sister); Frank pulls her from car; both pull JR from car + demand money; both pull JR from car + demand money; Frank hits comp's face; JR fights back + then shot by Castillo; JR runs + is continuously shot by Castillo; photo lineup of Castillo positive; Castillo had blood on both hands at scene before shots fired (Juan broke out window)

. Castillo — prev. arrests
1. Deadly conduct
2. Asst Fam.
3. Forgery
4. Felon in poss fire.
5. Poss of Body Armor by Felon

6

7 (sister)
2 (wife) of Frank Gonzales, Lucinda Gonzales
tells Night CID by phone on 12-8-03
that her family had been contacted
by Juan Castillo and had been told
where the gun was located that was
involved in the murder

, supposedly by a barb-wired
fence near the scene
, not found

, Lucinda Gonzales disappears (?)


, cell phone records show extensive activity
both prior to and after the comp's murder
Before — la from D. Espinosa's
Home: ███████████
7:21 A.M. — 1:43 A.M.
12-3-03
After — incoming 6:35 A.M., 12-3-03
— outgoing
1. 2031 hrs, 12-4-03,
46 secs., to
███████ (complete)
2. 2038 hrs., 12-4-03,
36 secs., to
7      ██████ (incomplete)

on 12-10-03, 2100 hrs., arrested def has small healing wound from index finger of Castillo's rt. hand (photo's taken)

. Def not at ▓▓▓▓▓ (where several weapons, bullet proof vests + cell phone found) , but at ▓▓▓▓▓

. with Carlos Castillo
Joseph Ortiz
Jessica Cantu

was Sprint cell phone, Samsung

arrested for poss c/s; Cantu released

1. AK47 Asst R.b
1 Mac 11 9 mm
, Winchester
1 12 ga shotgun

→ numerous rounds + calibers

on 12-11-03

. Teresa Quintero, w of Frank, tells det that def + Espinosa + Frank left in red car driven by Espinosa; that Frank calls her at 5:00 A.M saying he'd been arrested for unpd. child support; that def spoke to Frank's nephew, Brian Brown the next day and admitted murder + cut hand on fence

, Frank involved in accident 8-6-03 driving
'84 Silver Honda Accord, 4 dr. veh., TX LP

▓▓▓▓▓

. damage on pass. side
. (det thinks w/ of frank drove
frank to murder scene)

, w/ of frank gives 2nd st. that she drove
frank to house of Espinosa early
morning hours when shooting happened;
heard robbery being planned; denied
participation; that frank tells her from jail
that Castillo committed murder.

. det. —— can't find: (on 12-11-03,
                              1400 hrs.)
        A. car
        B. Brian Brown

, H# of Espinosa —— ▓▓▓▓▓
        . recorded from Annex on 12-3-03
        she tells Carlos __ on 3-way
        (921-1408) since Juan is not there
Carlos ←  to tell Juan not to worry, that
Castillo    she didn't tell the police anything
        male caller tells her not to be
        talking on a phone

. cell phone — not comp's
. Carlos Castillo — declined statement

. need: off's for arrest warrant

10.

Notes from 5-2-2005 statement of Bryan Brown,
5-2-05 notes of Lucinda Gonzales, EMS Report,
and Melissa Marie Pena.

Denny

Statement of Bryan Brown - taken 05/02/05

Bryan Anthony Brown 17 ███████ ████████
grandma Matilda Gonzales & ████████ w/ mother Blanca
[Martinez] + sometimes on Center St. w/ bro. Jacob Martinez.
My uncle is Francisco Gonzales. Aunt is Lucinda
cousin is Cassandra.

On 12/2/03 at Kirk w/ Francisco (Frank), his
girl Teresa Quintero, g'ma, aunt & cousins Frankie,
Jorette & Cassandra

He, Teresa, Frank, Frankie went to Jack-in-Box.
When we got back, Juan Castillo + some girl was there.
Referred to her as his girlfriend. I had been trying to get
in touch w/ Juan - he was to give me a tatoo. He has tatoo
equipment + piercing equip. When I got out of the car +
went up to Juan, he showed me a gun that he had
hidde behind his back (in waistband) It was Ruger 9mm.
I had asked him if it was a Glock. Black + silver.
He pulled out clip which was loaded w/ bullets, He let me
hold the clip. He had bulletproof vest on that night. He
showed it to me, I punched him in stomach to test it.

Months before, I had seen Juan w/ many guns + vest.
He carried them in trunk of his car + show them off. I remember
assault rifles w/ banana clips. I have never seen
Frank w/ any gun. Juan had 2 car: Monte Carlo + Corsica

Later that evening, F. asked me to watch little Frankie, & then he & Teresa left in Lucinda's car and Juan & the girl left in Juan car.   Didn't know that girl well, supposed to be a dancer.

F. & Teresa said they would be back later.  But, they never returned.   I got up couple of times & saw they weren't home.  Next Am, saw Teresa, but not F.   Asked. She said arrested for child-support non-pay.   He has been arrested many times for that.

Soon after that day, I was still trying to get tatoo, Juan came over to borrow shoes.   Had ugly boots that hurt his feet   Borrowed my white/grey tennis shoe.  Size 11, 12  Had never borrowed shoes before.

I met Juan because he hung w/ F. all the time - 1st after he had been arrested for pos. guns & vest.  when F & Teresa lived on Ralph St.

Few days after shooting, before I knew their involvement, Juan came by because I still wanted tatoo   He didn't have ink   We ended up in front cars;  Juan & Teresa in front; me & little F. in back.   I heard Juan say that this "this" was the 6th time that this had happened.   He also said that he wasn't going to get caught & that he needed to get out of town fast.  He also told her that he left the gun & vest in a field that night    Teresa said she drove up looking for

F. & Juan & that the "doors to the car were open" &
that she almost ran over something in the road. She
asked what that was & Juan told her that it was "him"
meaning the body of Tommy Garcia, Jr.   Juan also said
that he "shot (Tommy Garcia, Jr.) seven times in the head."

I was watching TV few days later, saw F. in cuffs, being
booked for shooting of 12-0303.  Tel. rang & I answered.
F calling from jail.   I gave tel to Teresa, then Juan
snuck in door.  Teresa said, "Juan is right here" & gave
phone to F.    I put 2 + 2 together & figured Juan, Teresa,
F. & Juan's gf (Debra) were all involved.

Around that time I saw my aunt confront J. in
their front yard.  Couldn't hear, but she was angry & yelling.

Police came by showing photos of Juan. I gave them
his tel #.

Juan told me he gets out of trouble all the time

* Memo to Bremont for ████████████████████ "
Re: Bryan Brown
      Gang member TWSK (Thrown-up Wicked Shit Krew
or The World's Sexiest Kids.   Backwards: Krack Smoking
Weed Token    AKA   SWOE   or   BB
      His brothers involved in money laundering, LT - Latino Thugs

<u>Lucinda Gonzales</u> 33 ██████ ██████████ sister of F.
(Given 5/2/05 during F's trial)

On 12/2/03 at home. Juan was bro's close friend,
met in jail. J. freq. spent night there. He would bring
his children by. His wife in prison. Juan had been
arrested for poss. body armor. We had heard that he
claimed to have killed 6 people before.

Early PM 12/02 Juan had been calling for F, but not home.
Ret. 900 Juan called & talked to F, then came over. He said he
& Debra, his gf. had an argument & she dropped him off.
Juan had said they were to look for job next day & asked to
borrow her car. "No!" Frank offered to drive, "No"
    Agreed to let Teresa drive the 3 of them to Juan's mother
on Hillette, Juan needed clothes.
    Couple of hours, Juan called, apolog. for lateness, had
trouble getting into mom's home.    Around 2-3, Teresa
came home w/ car. alone.   Frank got mad & walked; Juan
stayed at mom's.

When I woke up later that day around noon, T told me
F. in jail child supp. warrant.    Later at boyfriend's home,
saw news about killing on Clamp St.   On 12/6 learned
F. had been charged w/ that murder & I confronted T. T.
was scared & asked me to cover for her that night. Agreed,
but what?   She said she had heard Juan & Debra planning
to rob someone.   They told F about.   1st, Debra called on

guy + couldn't get him, 2nd call unsuccessful. Finally, she reached someone + arranged to set him up to rob him of drugs, money + ~~jewelry~~ jewelry. She dropped F. + J. at Clamp St. where Debra had already lured the guy in his car. T waited 2 blocks away. She heard gunshots, waited then drove, picked J. up. Juan was covered in blood. Why didn't pick Frank? Co Couldn't find him — she only saw Juanito.

I heard siren + drove Juan to Hutchen at apt. where he had change of clothes. She went inside + waited while J. took bath using Clorox. She then set him.

Next evening 12/07/03 overheard T talking low on phone. I asked a question - it was J. ~~Tec~~ asked him what happened to F. He said "don't worry about Frank, Frank didn't shoot him." I then said that after he himself that the boy he ran thru a field + got rid of mask, gun + gloves. T told me later that J said he had tried to go back + get rid of the evidence, but always people. "I called the police + told a homicide detective what I heard."

Next day, J came over driving Monte Carlo a tullas I confronted him. "You murderer, you sorry mother-fucker, my brother is in jail for what you did" He responded to the effect Even if I did it, I is going to take the rap He made pistol out of his hand

and pointed it at me    He said I had better be careful.
He looked at me w/ scary eyes.    T. later told me
that I told her to warn me to keep my mouth shut
    Haven't seen him since.
    T. also told me I told her someone named George
who lived on Hutchens had lent him the gun
    T. & J. were constantly in contact after that. She
left [mouth] in May 2004.
    I learned Juan had taken Brian's shoes because his
were covered w/ blood

SAFD   EMS   Report
Case # 03097703        12/3/03    2:34:24 AM
356 Mousound
Contacted  12/3/03   2:50:02 AM

Francisco Gonzales ████████
Reason = SOB (shortness of breath)?

Pt stated he was short of breath, PD had us
check pulse.  On arrival, pt was in no distress &
had no other complaints.  He was under arrest

Melissa Marie Pena
    Mother of Ashley B. Gonzales

Cause 95 EM 50405   sued Francisco M. Gonzales
for child support       —

On 4/30/00   in arrears $20,479.75

On probation, paid <u>nothing</u>

↑ S_ID # ████████

7-20-05 notes, disc(overy), J. Castillo, 6 pages.

. Maurice West-Valadez /
. mag Gt. - Ferrell
. Lunam - disc.
7-20-05, Q.G.C., J. Castillo, 10:45 - 12:30
. no deals yet w female, co-def.
. school records of def - obtained
  failures; below avg.

. 84 Honda Accord, owner, Lucinda Gonzalez
  — no defs forensics (LIC - NO9 ████)

. wife of def interviewed
   . not sexually loyal setup
   . def never worked
     upset about photo of def w
     build + guns
   . couldn't articulate why she
     stayed around def,
   . most of time — he was in
     prison, or she was
. 5-3-05 - Fran. Gon., co-def, debriefing
   (not signed)
   . F.G. w Teresa Quintero w def w
     Debra Espinosa — in T.Q's car
     . D.E. calls set up victim
     . planned robbery
     . def to use gun Carlos Castillo
       gave him

. def had rubber gloves + wearing     2.
bullet-proof vest

. F.G. holding .22 cal handgun given
to him by def.

. T.G in on robbery - turns off lts. to
their car which failed victim

. D.E. sucking Tommy Garcia's penis

. both defs run from scene; T.G drives
away down clamp st.

.winds up at apt complex
on Hutchins st.

. def arrives in black pick-up
may have been C.C.'s apt.

. def takes bath; uses Clorox
to get blood off hands;
throws bloody clothes in
dumpster

. "Juan told me that he killed
somebody at a dope house by
shooting him in the face. This
would have been after his arrest
on the gun charges"

"Juan + I bought a "twenti
. def uses cocaine; then" ... Juan
doesn't use drugs"
↳ of cocaine two months
before Juan shot Tommy

5-2-05 - Statement of Bryan Brown, 17 yrs.
. uncle is F.G.
. sees def + girl on 12-2-03 at
home ▬▬▬▬▬▬▬
. def has Ruger 9mm
. wearing vest
. def said gun was Glock
. overheard def tell T.G, after a few
days, ".... Juan say that 'this' was
the 10th time that this happened.
He also said that he wasn't going to
get caught and that he needed
to get out of town fast. He also told
her that he left the gun and
vest in a field that night...Juan
also said that he shot Tom bar. seven
times in the head."

5-2-05 - statement of Lucinda Gonzales [4].

- brother of F.G.

- at home, 12-2-03, ▓▓▓▓▓▓▓▓▓▓

  w   F.G.

      T.Q.  their son, Frankie

      mother, Matilda
      nephew, Bryan Brown
      her 2 daughters.

- "we had heard that he claimed
   to have killed le people before"

- she lets T.Q. take her car +
   drive F.G. + def to def's mom's
   house (blue Honda Accord)

* - agreed w T.Q. to lie about T.Q's
     whereabouts

- overhears T.Q. talking on phone to
   def saying "Don't worry about
   Frank, Frank didn't shoot him."

5.

+ Then admitted to shooting the boy
. witness then calls police

jail dis. records                    inmate/Larry
.cell assault; victim asleep at time
thinks assault done by cellmate
Tironn Cline + inmates in
cell 37 and 38
                . 11-24-04, 1530 hrs.

                . case dismissed,
                  1-11-05

2 fam. viol. cases
                7-20-02, 0830      btt
body armor — veh. stop, no 519 from
Forrest St. To Negahtos
        . def arrest on active
          armed + dang. warrant
          for deadly conduct or
          firearm parole violation
        . vests in trunk + ammo +
          guns

"AP Admitted that he robs                &
drug dealers for a living and
all (E) items were his"

· Off. J. Corona #284
  7-20-02

Deadly conduct, comp. Phillip Lopez,
no witness, shots into pass. side
truck, on 9-15-00, 1620 hrs.
2000-CR-5489 ; photo lineup (def #6)

pos. ID.;
  10-7-00    (pled guilty)
              5-11-01, 2 yrs to do

forgery - 6-29-02, arrested as pass.
at bank w/ 3 others in
drive through, $300 to
Crystal Arce, who says def
+ Edward Longoria stole purse
from burg. car

# Exhibit 24



TO THE CLERK OF THE DISTRICT COURTS OF BEXAR COUNTY, TEXAS:      0

IN THE CASE OF THE STATE OF TEXAS VS. CASTILLO, JUAN EDWARDO     ,
NO. 2004-CR-1461A      , CHARGED WITH CAPITAL MURDER - OTHER FELONY ,
YOU WILL PLEASE ISSUE A SUBPOENA FOR THE FOLLOWING WITNESSES, AS BELOW SET
OUT.  THE TESTIMONY OF SAID WITNESSES IS BELIEVED TO BE MATERIAL TO THE
STATE OF TEXAS IN THE SAID ISSUE.
74A RUDY J LUNA - ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

CRT

WITNESS APPEARANCE DATE: AUGUST 23, 2005        , IN THE 186TH JUDICIAL
DISTRICT COURT OF BEXAR COUNTY, TEXAS.
ATTENTION SHERIFF'S OFFICE: THIS SUBPOENA IS RETURNABLE ON OR BEFORE
AUGUST 16, 2005   .

WITNESS MY HAND THIS 23RD DAY OF AUGUST     ,A.D., 2005.

ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

THE STATE OF TEXAS      }

                         BEFORE ME, THE UNDERSIGNED AUTHORITY, ON

COUNTY OF BEXAR         }

THIS DAY PERSONALLY APPEARED THE ABOVE NAMED ASSISTANT CRIMINAL DISTRICT
ATTORNEY WHO, BEING BY ME DULY SWORN, STATES UNDER OATH THE FACTS CONTAINED
IN THE FOREGOING APPLICATIONS ARE TRUE.

DC2004CR1461A          074A

ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

SUBSCRIBED AND SWORN TO BEFORE ME, THIS      DAY OF        ,A.D.,     .

NOTARY PUBLIC IN AND FOR
BEXAR COUNTY, TEXAS

2005 AUG 23 P 1:34

TO THE CLERK OF THE DISTRICT COURTS OF BEXAR COUNTY, TEXAS:          0

IN THE CASE OF THE STATE OF TEXAS VS. CASTILLO, JUAN EDWARDO        ,
NO. 2004-CR-1461A      , CHARGED WITH CAPITAL MURDER - OTHER FELONY ,
YOU WILL PLEASE ISSUE A SUBPOENA FOR THE FOLLOWING WITNESSES, AS BELOW SET
OUT.  THE TESTIMONY OF SAID WITNESSES IS BELIEVED TO BE MATERIAL TO THE
STATE OF TEXAS IN THE SAID ISSUE.

WITNESS APPEARANCE DATE: AUGUST 24, 2005        , IN THE 186TH JUDICIAL
DISTRICT COURT OF BEXAR COUNTY, TEXAS.
ATTENTION SHERIFF'S OFFICE: THIS SUBPOENA IS RETURNABLE ON OR BEFORE
AUGUST 24, 2005   .

WITNESS MY HAND THIS 24TH DAY OF AUGUST       A.D., 2005

ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

THE STATE OF TEXAS          }

                    BEFORE ME, THE UNDERSIGNED AUTHORITY, ON

COUNTY OF BEXAR   .         }

THIS DAY PERSONALLY APPEARED THE ABOVE NAMED ASSISTANT CRIMINAL DISTRICT
ATTORNEY WHO, BEING BY ME DULY SWORN, STATES UNDER OATH THE FACTS CONTAINED
IN THE FOREGOING APPLICATIONS ARE TRUE.

DC2004CR1461A          075A

ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

SUBSCRIBED AND SWORN TO BEFORE ME, THIS      DAY OF        ,A.D.,      .

NOTARY PUBLIC IN AND FOR
BEXAR COUNTY, TEXAS

2005 AUG 24  A 8:59

Daniel Gonzalez

TO THE CLERK OF THE DISTRICT COURTS OF BEXAR COUNTY, TEXAS:        0

IN THE CASE OF THE STATE OF TEXAS VS. CASTILLO, JUAN EDWARDO        ,
NO. 2004-CR-1461A        , CHARGED WITH CAPITAL MURDER - OTHER FELONY ,
YOU WILL PLEASE ISSUE A SUBPOENA FOR THE FOLLOWING WITNESSES, AS BELOW SET
OUT.  THE TESTIMONY OF SAID WITNESSES IS BELIEVED TO BE MATERIAL TO THE
STATE OF TEXAS IN THE SAID ISSUE.
72A DEP. REGINALD WEST - ███████████████████████████████████████
   PLEASE NOTE THAT DEP. WEST IS ON STANDBY FOR THE DURATION

WITNESS APPEARANCE DATE: AUGUST 23, 2005        , IN THE 186TH JUDICIAL
DISTRICT COURT OF BEXAR COUNTY, TEXAS.
ATTENTION SHERIFF'S OFFICE: THIS SUBPOENA IS RETURNABLE ON OR BEFORE
AUGUST 23, 2005    .

WITNESS MY HAND THIS 22ND DAY OF AUGUST    , A.D., 2005 .
                                    _____
                                    ASSISTANT CRIMINAL DISTRICT ATTORNEY
                                    BEXAR COUNTY, TEXAS

THE STATE OF TEXAS        }
                              BEFORE ME, THE UNDERSIGNED AUTHORITY, ON

COUNTY OF BEXAR           }

THIS DAY PERSONALLY APPEARED THE ABOVE NAMED ASSISTANT CRIMINAL DISTRICT
ATTORNEY WHO, BEING BY ME DULY SWORN, STATES UNDER OATH THE FACTS CONTAINED
IN THE FOREGOING APPLICATIONS ARE TRUE.

        DC2004CR1461A        ·    072A        _____
                                             ASSISTANT CRIMINAL DISTRICT ATTORNEY
                                             BEXAR COUNTY, TEXAS

SUBSCRIBED AND SWORN TO BEFORE ME, THIS        DAY OF        ,A.D.,    .

                            _____
                            NOTARY PUBLIC IN AND FOR
                            BEXAR COUNTY, TEXAS

2005 AUG 22  P 4: 39

BY Gracie Estrada

TO THE CLERK OF THE DISTRICT COURTS OF BEXAR COUNTY, TEXAS:          0

IN THE CASE OF THE STATE OF TEXAS VS. CASTILLO, JUAN EDWARDO          ,
NO. 2004-CR-1461A       , CHARGED WITH CAPITAL MURDER - OTHER FELONY ,
YOU WILL PLEASE ISSUE A SUBPOENA FOR THE FOLLOWING WITNESSES, AS BELOW SET
OUT.  THE TESTIMONY OF SAID WITNESSES IS BELIEVED TO BE MATERIAL TO THE
STATE OF TEXAS IN THE SAID ISSUE.
73A EDWARD GIDDINGS - ████████████████████████████████████████████



POLICE: PLEASE REFER TO REPORTS UNDER ASSIGNMENT NO. 03-810893
NOTE TO ABOVE WITNESSES: PLEASE CALL (210) 335-2716 TO PLACE YOURSELF
ON STANDBY.
WITNESS APPEARANCE DATE: AUGUST 23, 2005          , IN THE 186TH JUDICIAL
DISTRICT COURT OF BEXAR COUNTY, TEXAS.
ATTENTION SHERIFF'S OFFICE: THIS SUBPOENA IS RETURNABLE ON OR BEFORE
AUGUST 23, 2005   .

WITNESS MY HAND THIS 22ND DAY OF AUGUST   , A.D.) 2005

                                   _____
                                   ASSISTANT CRIMINAL DISTRICT ATTORNEY
                                   BEXAR COUNTY, TEXAS

THE STATE OF TEXAS      }
                           BEFORE ME, THE UNDERSIGNED AUTHORITY, ON

COUNTY OF BEXAR         }

THIS DAY PERSONALLY APPEARED THE ABOVE NAMED ASSISTANT CRIMINAL DISTRICT
ATTORNEY WHO, BEING BY ME DULY SWORN, STATES UNDER OATH THE FACTS CONTAINED
IN THE FOREGOING APPLICATIONS ARE TRUE.


       DC2004CR1461A          073A       _____
                                         ASSISTANT CRIMINAL DISTRICT ATTORNEY
                                         BEXAR COUNTY, TEXAS

SUBSCRIBED AND SWORN TO BEFORE ME, THIS     DAY OF          ,A.D.,    .

                            _____
                            NOTARY PUBLIC IN AND FOR
                            BEXAR COUNTY, TEXAS

2005 AUG 22  P 4: 39

BY_ Tracie J. Shade

TO THE CLERK OF THE DISTRICT COURTS OF BEXAR COUNTY, TEXAS:       0

IN THE CASE OF THE STATE OF TEXAS VS. CASTILLO, JUAN EDWARDO        ,
NO. 2004-CR-1461A      , CHARGED WITH CAPITAL MURDER - OTHER FELONY ,
YOU WILL PLEASE ISSUE A SUBPOENA FOR THE FOLLOWING WITNESSES, AS BELOW SET
OUT.  THE TESTIMONY OF SAID WITNESSES IS BELIEVED TO BE MATERIAL TO THE
STATE OF TEXAS IN THE SAID ISSUE.

52A R SIMON - ███████████████████████████████████████████

53A MICHAEL MARTINEZ -██████████████████████████████████████████

54A ERIN REAT -█████████████████████████████████████

55A J MANDUJANO - ████████████████████████████████████

56A J SABO -█████████████████████████████████████

57A B WHITSON - █████████████████████████████████

58A RUDY LUNA -█████████████████████████████████

POLICE: PLEASE REFER TO REPORTS UNDER ASSIGNMENT NO.
NOTE TO ABOVE WITNESSES: PLEASE CALL (210) 335-2716 TO PLACE YOURSELF
ON STANDBY.
WITNESS APPEARANCE DATE: AUGUST 23, 2005       , IN THE 186TH JUDICIAL
DISTRICT COURT OF BEXAR COUNTY, TEXAS.
ATTENTION SHERIFF'S OFFICE: THIS SUBPOENA IS RETURNABLE ON OR BEFORE
AUGUST 16, 2005   .

WITNESS MY HAND THIS 30TH DAY OF JUNE        A.D., 2005.

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

THE STATE OF TEXAS        }

                 BEFORE ME, THE UNDERSIGNED AUTHORITY, ON

COUNTY OF BEXAR          }

THIS DAY PERSONALLY APPEARED THE ABOVE NAMED ASSISTANT CRIMINAL DISTRICT
ATTORNEY WHO, BEING BY ME DULY SWORN, STATES UNDER OATH THE FACTS CONTAINED
IN THE FOREGOING APPLICATIONS ARE TRUE.

DC2004CR1461A

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

SUBSCRIBED AND SWORN TO BEFORE ME, THIS       DAY OF        ,A.D.,      .

_____
NOTARY PUBLIC IN AND FOR
BEXAR COUNTY, TEXAS

FILED
DISTRICT CLERK
BEXAR CO. TEXAS

2009 JUL -7  P 4:49

BY: _____

TO THE CLERK OF THE ᴅISTRICT COURTS OF BEXAR COUNTY, TEXAS:          0

IN THE CASE OF THE STATE OF TEXAS VS. CASTILLO, JUAN EDWARDO          ,
NO. 2004-CR-1461A        , CHARGED WITH CAPITAL MURDER - OTHER FELONY ,
YOU WILL PLEASE ISSUE A SUBPOENA FOR THE FOLLOWING WITNESSES, AS BELOW SET
OUT.  THE TESTIMONY OF SAID WITNESSES IS BELIEVED TO BE MATERIAL TO THE
STATE OF TEXAS IN THE SAID ISSUE.

42A C LOCHA - ██████████████████████████████████

43A H BARRY - ██████████████████████████████████

44A J SCHILLER - ████████████████████████████████

45A T FULLER - █████████████████████████████████

46A M GARZA - ██████████████████████████████████

47A M OLIVA - ██████████████████████████████████

48A T RAGLAND - ████████████████████████████████

49A M HUNT - ███████████████████████████████████

50A L SPIESS - █████████████████████████████████

51A ANZ - 115 ████████████████████████████████

POLICE: PLEASE REFER TO REPORTS UNDER ASSIGNMENT NO.
NOTE TO ABOVE WITNESSES: PLEASE CALL (210) 335-2716 TO PLACE YOURSELF
ON STANDBY.
WITNESS APPEARANCE DATE: AUGUST 23, 2005       , IN THE 186TH JUDICIAL
DISTRICT COURT OF BEXAR COUNTY, TEXAS.
ATTENTION SHERIFF'S OFFICE: THIS SUBPOENA IS RETURNABLE ON OR BEFORE
AUGUST 16, 2005    .

WITNESS MY HAND THIS 30TH DAY OF JUNE        A.D.; 2005  *David B Luman*

                                   _____
                                   ASSISTANT CRIMINAL DISTRICT ATTORNEY
                                   BEXAR COUNTY, TEXAS

THE STATE OF TEXAS        }
                              BEFORE ME, THE UNDERSIGNED AUTHORITY, ON

COUNTY OF BEXAR           }

THIS DAY PERSONALLY APPEARED THE ABOVE NAMED ASSISTANT CRIMINAL DISTRICT
ATTORNEY WHO, BEING BY ME DULY SWORN, STATES UNDER OATH THE FACTS CONTAINED
IN THE FOREGOING APPLICATIONS ARE TRUE.

                                   *David B Luman*

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖              _____
   DC2004CR1461A                   ASSISTANT CRIMINAL DISTRICT ATTORNEY
                                   BEXAR COUNTY, TEXAS

SUBSCRIBED AND SWORN TO BEFORE ME, THIS      DAY OF       ,A.D.,    .

                              _____
                              NOTARY PUBLIC IN AND FOR
                              BEXAR COUNTY, TEXAS

FILED
DISTRICT CLERK
BEXAR CO. TEXAS

2013 JUL -7  P  6: 09

DEPUTY

BY:

TO THE CLERK OF THE DISTRICT COURTS OF BEXAR COUNTY, TEXAS:      0

IN THE CASE OF THE STATE OF TEXAS VS. CASTILLO, JUAN EDWARDO        ,
NO. 2004-CR-1461A      , CHARGED WITH CAPITAL MURDER - OTHER FELONY ,
YOU WILL PLEASE ISSUE A SUBPOENA FOR THE FOLLOWING WITNESSES, AS BELOW SET
OUT.   THE TESTIMONY OF SAID WITNESSES IS BELIEVED TO BE MATERIAL TO THE
STATE OF TEXAS IN THE SAID ISSUE.

32A D SOTO - ███████████████████████████████████████████████
33A J BONILLA - █████████████████████████████████████████████
34A J YARBROUGH - ███████████████████████████████████████████
35A R WILSON - ██████████████████████████████████████████████
36A M HARRIS - ██████████████████████████████████████████████
37A J SLAUGHTER - ███████████████████████████████████████████
38A E CRUZ - ████████████████████████████████████████████████
39A M PODWIKA - █████████████████████████████████████████████
40A L TIJERINA - ████████████████████████████████████████████
41A M GARCIA - ██████████████████████████████████████████████

POLICE: PLEASE REFER TO REPORTS UNDER ASSIGNMENT NO.
NOTE TO ABOVE WITNESSES: PLEASE CALL (210) 335-2716 TO PLACE YOURSELF
ON STANDBY.
WITNESS APPEARANCE DATE: AUGUST 23, 2005      , IN THE 186TH JUDICIAL
DISTRICT COURT OF BEXAR COUNTY, TEXAS.
ATTENTION SHERIFF'S OFFICE: THIS SUBPOENA IS RETURNABLE ON OR BEFORE
AUGUST 16, 2005  .

WITNESS MY HAND THIS 30TH DAY OF JUNE      , A.D., 2005.

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

THE STATE OF TEXAS        }
                                    BEFORE ME, THE UNDERSIGNED AUTHORITY, ON

COUNTY OF BEXAR           }

THIS DAY PERSONALLY APPEARED THE ABOVE NAMED ASSISTANT CRIMINAL DISTRICT
ATTORNEY WHO, BEING BY ME DULY SWORN, STATES UNDER OATH THE FACTS CONTAINED
IN THE FOREGOING APPLICATIONS ARE TRUE.

DC2004CR1461A

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

SUBSCRIBED AND SWORN TO BEFORE ME, THIS      DAY OF      ,A.D.,      .

_____
NOTARY PUBLIC IN AND FOR
BEXAR COUNTY, TEXAS

FILED
DISTRICT CLERK
BEXAR CO. TEXAS

2003 DEC -7  P 4:49

DEPUTY

TO THE CLERK OF THE DISTRICT COURTS OF BEXAR COUNTY, TEXAS:        0

IN THE CASE OF THE STATE OF TEXAS VS. CASTILLO, JUAN EDWARDO       ,
NO. 2004-CR-1461A       , CHARGED WITH CAPITAL MURDER - OTHER FELONY ,
YOU WILL PLEASE ISSUE A SUBPOENA FOR THE FOLLOWING WITNESSES, AS BELOW SET
OUT.  THE TESTIMONY OF SAID WITNESSES IS BELIEVED TO BE MATERIAL TO THE
STATE OF TEXAS IN THE SAID ISSUE.

22A T ANGELL -
23A E GIDDINGS -
24A S SULLIVAN -
25A C VIEYRA -
26A T RAWSON -
27A V GONZALEZ -
28A D HIGGINBOTHAM -
29A J GARZA -
30A D TRITLEY -
31A P HOLDER -

POLICE: PLEASE REFER TO REPORTS UNDER ASSIGNMENT NO.
NOTE TO ABOVE WITNESSES: PLEASE CALL (210) 335-2716 TO PLACE YOURSELF
ON STANDBY.
WITNESS APPEARANCE DATE: AUGUST 23, 2005       , IN THE 186TH JUDICIAL
DISTRICT COURT OF BEXAR COUNTY, TEXAS.
ATTENTION SHERIFF'S OFFICE: THIS SUBPOENA IS RETURNABLE ON OR BEFORE
AUGUST 16, 2005   .

WITNESS MY HAND THIS 30TH DAY OF JUNE     , A.D., 2005.

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

THE STATE OF TEXAS        }
                             BEFORE ME, THE UNDERSIGNED AUTHORITY, ON
COUNTY OF BEXAR           }

THIS DAY PERSONALLY APPEARED THE ABOVE NAMED ASSISTANT CRIMINAL DISTRICT
ATTORNEY WHO, BEING BY ME DULY SWORN, STATES UNDER OATH THE FACTS CONTAINED
IN THE FOREGOING APPLICATIONS ARE TRUE.

DC2004CR1461A

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

SUBSCRIBED AND SWORN TO BEFORE ME, THIS      DAY OF        ,A.D.,    .

_____
NOTARY PUBLIC IN AND FOR
BEXAR COUNTY, TEXAS

FILED
DISTRICT CLERK
AUSTIN, TEXAS

2013 JUN -7  P 4:40

DEPUTY

TO THE CLERK OF THE DISTRICT COURTS OF BEXAR COUNTY, TEXAS:          0

IN THE CASE OF THE STATE OF TEXAS VS. CASTILLO, JUAN EDWARDO           ,
NO. 2004-CR-1461A       , CHARGED WITH CAPITAL MURDER - OTHER FELONY ,
YOU WILL PLEASE ISSUE A SUBPOENA FOR THE FOLLOWING WITNESSES, AS BELOW SET
OUT.  THE TESTIMONY OF SAID WITNESSES IS BELIEVED TO BE MATERIAL TO THE
STATE OF TEXAS IN THE SAID ISSUE.

12A VINCENT DIMAIO - █████████████████████████████████████

13A ELIZABETH ROSENAUER - ████████████████████████████████████

14A AMANDA RODRIGUEZ - ██████████████████████████████████████████

15A RALPH LOONEY - ████████████████████████████████████████████

16A CUST. OF RECORDS ████████████████████████████████████████-
   FOR ACCOUNT ████

17A CONNIE MEJIA - ██████████████████████████████████████████████

18A CYNTHIA LOZANO - ████████████████████████████████████████████████

19A JUNE GUMPN - ████████████████████████████████████████████████

20A JESSE TORRES - ███████████████████████████████████████████████

21A ED LOVE - ████████████████████████████████████████████████

WITNESS APPEARANCE DATE: AUGUST 23, 2005          , IN THE 186TH JUDICIAL
DISTRICT COURT OF BEXAR COUNTY, TEXAS.
ATTENTION SHERIFF'S OFFICE: THIS SUBPOENA IS RETURNABLE ON OR BEFORE
AUGUST 16, 2005     .

WITNESS MY HAND THIS 30TH DAY OF JUNE      , A.D., 2005.

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

THE STATE OF TEXAS        }
                              BEFORE ME, THE UNDERSIGNED AUTHORITY, ON

COUNTY OF BEXAR           }

THIS DAY PERSONALLY APPEARED THE ABOVE NAMED ASSISTANT CRIMINAL DISTRICT
ATTORNEY WHO, BEING BY ME DULY SWORN, STATES UNDER OATH THE FACTS CONTAINED
IN THE FOREGOING APPLICATIONS ARE TRUE.

DC2004CR1461A

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

SUBSCRIBED AND SWORN TO BEFORE ME, THIS       DAY OF        ,A.D.,      .

_____
NOTARY PUBLIC IN AND FOR
BEXAR COUNTY, TEXAS

FILED
DISTRICT CLERK

TO THE CLERK OF THE DISTRICT COURTS OF BEXAR COUNTY, TEXAS:       0

IN THE CASE OF THE STATE OF TEXAS VS. CASTILLO, JUAN EDWARDO          ,
NO. 2004-CR-1461A      , CHARGED WITH CAPITAL MURDER - OTHER FELONY ,
YOU WILL PLEASE ISSUE A SUBPOENA FOR THE FOLLOWING WITNESSES, AS BELOW SET
OUT.  THE TESTIMONY OF SAID WITNESSES IS BELIEVED TO BE MATERIAL TO THE
STATE OF TEXAS IN THE SAID ISSUE.

2A TOMMY GARCIA -

3A DINA ROBLES -

4A DAVID ROBLES -

5A JOHN MEDLICK -

6A GEORGE GRUBER -

7A ROBERT JIMENEZ -

8A FRANK RUSSELL -

9A MARY LOU GARCIA -

10A TERESA QUINTERO -

11A JAMES FENIMORE -

WITNESS APPEARANCE DATE: AUGUST 23, 2005         , IN THE 186TH JUDICIAL
DISTRICT COURT OF BEXAR COUNTY, TEXAS.
ATTENTION SHERIFF'S OFFICE: THIS SUBPOENA IS RETURNABLE ON OR BEFORE
AUGUST 16, 2005    .

WITNESS MY HAND THIS 30TH DAY OF JUNE       A.D., 2005.

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

THE STATE OF TEXAS        }
                              BEFORE ME, THE UNDERSIGNED AUTHORITY, ON

COUNTY OF BEXAR           }

THIS DAY PERSONALLY APPEARED THE ABOVE NAMED ASSISTANT CRIMINAL DISTRICT
ATTORNEY WHO, BEING BY ME DULY SWORN, STATES UNDER OATH THE FACTS CONTAINED
IN THE FOREGOING APPLICATIONS ARE TRUE.

DC2004CR1461A

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY
BEXAR COUNTY, TEXAS

SUBSCRIBED AND SWORN TO BEFORE ME, THIS      DAY OF        ,A.D.,      .

_____
NOTARY PUBLIC IN AND FOR
BEXAR COUNTY, TEXAS

FILED
DISTRICT CLERK
TEXAS

2012 JUN 17 P 4: 49

DEPUTY

Sylvia Castro

# Exhibit 25

IDEAS, Castillo ①

1) Pre-Trial motion on co-operating accomp
. both

2) insufficient evid of underlying felony
. acc wit — not corroborated

5x 58 — portion of gold chain (from scene?)
broken, therefore def
could not have been
wearing same later

5x 132 — photo def's hands — no injuries
5x 134 — " " finger (didn't break
5x 135 — " " knuckle driver's side
5x 136 — (small cut) window as
" text. to be
accomplices)

5x 145 — autopsy (on comp)
wrist watch
yellow metal bracelet
yellow metal ring (Texas Shape)
stud earring
$124.00 in money clip
$450.00 in money

2

⑦ gunshot wounds
　2 left side face
　1 left side of neck
　1 top rt. shoulder
　1 back of left shoulder
　1 left back
　(6 - ?)

SX 176 - photog of def w. step son + friend . wearing body armor . both w semi auto pistols   age 4 yrs.

SX 218 - fed judg for poss of firearm by conv. felon on 7-20-02, signed 4-7-04

DX 4 - photo of def at arrest wearing gold yellow metal chain with silver/gold cross

DX 5 - closeup of chain & cross, "

3

ⓔ                    (doesn't match weave of
                      54 58)

motive — 17, 33, 1-7 — revenge
          17, 35, 8-11 — plan for robbery
                         only to steal
                         money

                    ✓ Comp. — was wearing
                    " ... a gold necklace,
                    kind of like a spinner
                    necklace, like a
                    medallion ... 17, 39,
                    11-16
                              . "Frank busted it
                                off him (necklace)
                                17, 42, 9-17

. Debra Espinosa's plea agreement
          17, 68, 16-25; 69, 1-16

                                                    /quote
. Bryan Brown says def admitted
          shooting 17, 97, 8-25; 98, 1-2; 106, 2-9
          somebody                                   19), 10-22
. Lucinda Gonzales says def admitted
          shooting comp. 16, 184, 1-25; 185, 1-17
                              but agreed to lie about
                              Thomas Quintero's involve

, dea

. GSR — found on Franc. Grrg? no.

plea agree F.G. — 16, 132, 8-13

⊗ comment on failure to testify
16, 145, 1-25
ct. chg—131 — on def's not testifying

✓ 17, 76, 4-7 F.G. took chain

# MEMORANDUM OPINION

No. 04-03-00858-CR

Shirley A. BUTLER,
Appellant

v.

The STATE of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2002-CR-6617
Honorable Pat Priest ☐, Judge Presiding

Opinion by:    Sarah B. Duncan, Justice

Sitting:        Alma L. López, Chief Justice
                Catherine Stone, Justice
                Sarah B. Duncan, Justice

Delivered and Filed:  September 21, 2005

AFFIRMED

Shirley A. Butler appeals the judgment convicting her of misapplying fiduciary funds in an aggregate amount of $20,000.00 or more but less than $100,000.00, ordering restitution in the amount of $99,999.96, and placing her on community supervision for ten years. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Butler's mother, Lee Vera Tussie, received a $750,000.00 settlement. After payment of attorney's fees, approximately $25,000.00 was distributed to each of Mrs. Tussie's seven children, including Butler, who was Mrs. Tussie's guardian; and the remainder was placed in a trust for Mrs. Tussie's benefit. Shortly thereafter, Mrs. Tussie died intestate; accordingly, the trust paid its expenses and issued a check for $214,866.99 to Butler, who by then had qualified as the independent

**BACK OF PRIOR PAGE**

# Exhibit 26

Francisco Gonzales 35

Children   3
   youngest by Teresa

Auto theft
Burg. Veh   TDC '96-'98

drug addiction - Cocaine
   10-15 years

Juan Castillo
   5 years

12-03 staying w/ Mom
   Keith

12-2 Juan + Debbie pulled
up to his home -
   Debbie's mom's car

* Intention were not to hurt
anybody -
   Plan: Debbie was to set
up a guy to take dope +
money

Juan
Asked Lucinda if they could borrow her car

1st - he Frank + Teresa - small 4 door -
2nd Juan + DE.

5x79 photo of car

Went to Debbie's house - doesn't know when
She pulled in driveway.   Teresa phd on street
D + J got out - D. went into house + got
cordless phone.
Juan got in back seat w/ T.

D. got in.   said 1st guy couldn't come.

Took a ride - where D was going to take
the guy, drove around a while.   Back
to D's home, dropped her off.

Me + Juan were good friends - Debbie was setting
up T. to rob him.   D was going to get high,
persuaded T. to pick her up.

Found D had been picked up

T. dropped he + Juan off + was to wait
at the corner - Clemon & Villaret.
   J. was living w/ mom at this time.

   Wearing jean + dark shirt.   Had 22 revolver,
not loaded. —
   J. dressed in black.   Had 9 mm auto.

   Stopped at George's house to get gun
Carlos - heavy set.
   Juan got out to get another gun for F to use
for show.   Also got black masks, holes for eyes
   D. already knew J had gun.

   Creeping along area to car - Cameo - had
never seen it before.   Knew where she was
going to be - only car there.   Dark
   Didn't see anything as they approach.

   He F, was going to driver side, that
was the plan.   T. was to be on passenger side
   D was going perform oral sex.   F expected

   Opened driver's door, saw D "coming up"
from T.   Pass. door locked, Juan

shattered window w/ gun butt —

J.: brace yourself — give me everything you got

✳ Gun went off inside car,

F pulled D out of car    They were on
driver side outside of car

Shot surprised him — not part of the plan.

T. got out of car, pants unbuttoned, Dean
cont. to demand money. Gun pointed at T.
T starts to run.   J. shoot him again twice
in the back.   He + D still standing there
"Does in shock!"

T. fell on street.  J. goes up to him,
shoots him 4 more times at close range.
4 quick shots.

Took off mask, ran to flea mkt., saw
D run to a house.   Threw mask, keys + cell
phone over fence.   Threw/Hid his gun

5x76 ski mask

Why didn't you throw gun w/ mask, etc?
22 revolver

trying to get out of area.

Didn't see where △ went - went diff. directions

D went to home

Car stopped. Told him

Warrant for child support

neg. GSR

Told them I didn't know nothing

12-6 Told them the truth

# Exhibit 27

# Q&A of accomplice

# Frank Gonzales

---

**Prepared by Habeas Attorney**

**to show what cross-exam**

**could have been.**

**HABEAS ATTORNEY'S**
**DRAFT Q&A OF ACCOMPLICE   FRANK GONZALES**
**Based on his sole statement in Attorney Callahan's filed, Police Reports in Attorney**
**Callahan's file,**
**Statements or notes of other Witnesses in Callahan's file,**
**and his direct Testimony**

**Attack him on his Criminal History**
- **You have a long record of criminal activity, don't you**.
  - You have had a number of criminal convictions.
    - Burglary of a vehicle.                    (Court records)
      - That means that you have no respect for another's person's property, does it not?
    - Failure to pay child support?        (Expect DA to open door)
      - That means that you put yourself ahead of the best welfare of your children.
        - You believe it is better to feed yourself before you feed your children.
          - You are overweight.  Your kids are thin and skinny.
  - ***And you have a history of robbing people to support a drug habit***.
    - --*Backup:*  Debra Espinoza's statement of December 4, 2009:
    "There is this guy named Frank, who I have known for about a month. *He has told me that he robs people and I know that he steals and shoplifts to support his drug habit.*
    →*If He Denies*:                    (Play him against Debra Espinoza)
      - So if there (was)(is) sworn testimony in his case that you rob persons and steal and shoplift to support a drug habit, then such a witness would be a liar.
      --*If Yes*:  Such a witness would be unworthy of belief.
    →*If He Admits*:                    (Cram his acts down his throat.)
      - And just to make sure we are talking the same terms, when you ***CONFESS*** that you **rob people**, this is when when you use threats of force or violence against persons, to ***COMPEL*** persons to give you money.
        - **This is a pattern of conduct that you use.**
          - And how many times in the past have you so robbed persons?
          - And what were the threats you used?
            - --*If he Denies*:  So you used a weapon then?
              - So if you did not use threats or weapons, how successful  a robber were you?  **Did you hit a victim**? (compare with his statement where he wines, "I didn't want anybody to get hurt."
          - What kind of weapon did you use?
          - And having engaged in robbery in the past as prior plan or scheme, you decided to do so again?    (TEX. R. EVID. 404(b))
          - Since you had robbed persons in the past, it made it that much easier for you to rob Tommy Garcia that night?

1

<u>***DRUG EVIDENCE LAW—Law Backup***</u>

- ***To show drug/alcohol use, PROPONENT must prove contemporaneous consumption.*** Kennedy v. State, 200 S.W.2d 400, 404 (Tex. Crim. App. 1947).
- Ramirez v. State, 802 S.W.2d 674, 676 (Tex. App.--Beaumont 1990). Court erred letting the state to ask defense witness about prior heroin where no attempt was made to show drug use was contemporaneous with event in question. Turner v. State, 762 S.W.2d 705, 707 (Tex. App.--Houston [1st Dist.] 1988, pet. ref'd). Prior drug use was inadmissible.
  - *Contra*: Munoz v. State, 763 S.W.2d 30 (Tex. App.--Corpus Christi 1988, ref'd).
- —Use of alcohol and drugs admitted as evidence of disease and pathology, not of character. Halverson v. Baird, 146 F.3d 680, 686 (9th Cir. 1998).

- And you engaged in your **ADMITTED** criminal activity to support a drug habit of yours?                         (from Debra Espinoza Statement—prior page)
  → He makes such an admission on direct:  (RR Vol. 16).
  - --P. 147: I was de-toxing from drugs at the time.
  - --P. 156: ***Re-Direct by Lunan:*** Have used cocaine for 15 years. It changes me.
- You admit that you had been using drugs and were under the influence of drugs at the time that Tommy Garcia was shot?                    (Don't say "murdered."
  --***Exploit any Admission***:
  - So you ***CONFESS*** that on the night that Tommy Garcia was robbed you were under the influence of illegal drugs?
  - And you also ***CONFESS*** you have a drug habit?
    - So you are addicted to drugs?
    - And how long have you had this drug addiction?
      → ***Exploit the duration***.
      - So you let the drug addiction control your life.
        - That is why you burglarize cars?
        - That is why you do not pay your child support?
        - That is why you steal?
        - That is why you rob?
  - **And what kind of drugs are you addicted to**?
    → **Cocaine**:  powder or crack or both.
    --***If Yes***:  And cocaine addicts can experience a cocaine psychotic rage?
      - You have seen that?
      - You have experienced that?
    → **Methamphetamine**.
      - Meth messes up your teeth.
      - Would you show jurors you teeth?
        → Describe for the record.  Eats teeth like it is acid.
    → **Heroin**.
      - If you inject, then you have a massive compulsion to feed your habit.

- ***Summarize***:  So you had a long history of criminal activity and of drug addiction?

2

*Planning the Robbery Against Tommy Garcia*
--*Backup*→His statement conflicts with statement of Debra Garcia (play against each other).

→ <u>Gonzales 12-06-30 Stmt, p. 1, ¶ 2, line 5+</u>: "About 10:30 last Thursday (Habeas attorney from police reports: Wed., Dec. 3, 2003, day of murder). Juanito called my house and said he needed to talk to me. He asked if he could come by and I told him to come on. He got thee about 11:00 or 11:15. When he got there, he was with that girl Debbie. He said Debbie was going to set up this dude that had some money. He said that the dude had money, and we would all get some. I told him that I had things to do. He said that it wouldn't take that long. I said, 'Fuck it; let's go.'" (And crime happens that night).

→<u>Debra Espinoza Stmt of December 7, 2003, p. 1, ¶ 1, line 1</u>:
"Juan and Frank had been *planning* to rob somebody for about *three days*."

● **<u>True you had planned this robbery for three days before Tommy Garcia was shot</u>?**
   →*When He Denies*:                    (Play him against Debra Espinoza)
      ● So if there (was)(is) sworn testimony in his case that you had planned for three days to rob Tommy Garcia, then such a witness would be a liar.

*Countering Who Came Up with the Plan*
● You said that my client came up with the plan?
   ● **But True the car that was used belonged to your family?**
      →*Backup*: Not in Gonzales' statement—comes from Debra Espinoza
   ● **And True the person who drove the car before and after the robbery was *your wife*?**
      →*Backup*: Not in Gonzales' statement—comes from Debra Espinoza
      ● *If He Now Admits*:
         ● So if you are going to involve you *OWN* wife.
            ● She must have had real confidence in your ability to rob someone to get involved.
            ● You must have had lots of experience in this activity to involve your own wife.
            ● You must have had total control of the situation to involve your wife.
            ● *And no where in your sole typed statement to police do you mention that your wife was involved*?
               ● **<u>Your silence was a lie</u>.**
                  ● It was more than just silence, wasn't it, Mr. Gonzales?
                     **True in your typed statement, you wrote, "It was just me, Juan, and this chick named Debbie that knew about this."**
                     -->*Backup*: His statement of 12-6-2003, p. 1, Lines 10-11 from bottom of page.
                        ● So it was more than just your silence, *you made an affirmative lie.*
                        ● You told a lie under oath when you gave that statement.
                           ● Just like the oath you took today.
         ● *If He Denies*: (Play him against Debra Espinoza)

3

- So if there (was)(is) sworn testimony in his case that the car used in this case belonged to a family member and that you wife drove such a car, then such a person would be a liar?
- **Reality at Trial**. Gonzales admits that the car used in the robbery came from his sister (RR Vol. 16, pp. 89-90) and that his wife drove them to the robbery scene full away of the planned robbery (*Id.*, p. 96).

- *He Accused Debra Espinoza*: In fact, you told the police that "that fucking bitch, it was that whore's idea to do it"? (App'x Tab 23, 3-9-04, 9:50 a.m. Discovery notes from review of homicide report, 12 pages of notes, page 7)
  - Subpoena Detective for prior inconsistent statement. Add this to detective's Q&A.

### *Dirty Up Debra Espinoza*

- And it was this female that was to set up the young man for the robbery?
  - She was older than the young man?
  - She should have known better, right?
    - But she did it, any way.
  - And you knew better, too?
    - But you did it anyway.
- The goal was to get money.
  - Money for you.
  - Money for Debra.
- And you claimed in your typed, *sworn*, statement that when you heard it would not take long, your response was "Fuck it, let's go."
  - →*Backup*: His December 3, 2003 Stmt, 2d ¶, line 9.

### *Details of the Crime—Contradict Debra Espinoza and Implicate Frank*

- *Wearing Ski Mask*
  - Now you wore a ski mask during the robbery and shooting? (Tie the shooting into the robbery).
    - That was so you could commit the crimes without being identified.
- *Walking up on Passenger Side of Car.*
  (Goal?: (1) Implicate in shooting—he's closest. (2)He changes door to Driver's side)
  - True you walked up **to** the parked side of the Camaro with JR and Debra.
    - →*Backup*: His Dec. 6, 2003 Statement, p. 1, 5th line from bottom:
      "We walked up **to** the passenger side of the car."
  - So you
- *Door He Opened*                    (Goal: Contradict Debra and his above stmt)
  - And you opened a door of the Camaro.
  - Which door did you open.
    - The purpose of your opening the door was for *you* to remove Debra.
    - True you statement originally said that you opened the passenger side door.
      - You scratched out "passenger" and changed it to "driver's" side door.
        - --*Backup*: **His Dec. 6, 2003 Statement, p. 1, 2d line from bottom**
          "All I remember saying is 'get off the car, as I opened the (passenger→ scratched out)(driver's—handwritten in as an interlineation) side door."
          - And why did you say "get *off* the car, instead of "*out of* the car."

4

- Just signed a statement when you did not know what was in the statement.
  - Policeman wrote the statement for you?
    - In fact at the end of the statement that policeman typed for you, true you wrote in the last ¶:  "I can read, but there are some words I don't read."
- So if you really and truly opened the driver's side door, you are having to pull your partner in the crime Debra, across a center console in the Camaro, across a raised gear shift lever, and past the steering wheel?
  - →*Confront with Photo of interior of Car if he balks*:  State Exhibit 49.
- *Getting to Driver's Side.*
  - Pass in front by the hood?
    --So JR looking ahead would be able to see you?
  - Pass to the rear by trunk of car?
    - When did you do this—Before out after first shot?
- *Busting Out Window.*
  - **Now did you bust out any window in that Camaro? What? Where?**
    (Goal:  Contradict Debra and himself.)
      - →*Habeas Counsel Note*:  Each side has only a single side window, *See e.g.* photos seen in discovery.     (State Exhibits 45 and 47)
    - Now in the discovery process, I was able to view photographs on JR's Camaro that were taken by police on the night of his death? (Set her up for the fall).
      - Now the glass was knocked out of the passenger side door? *See e.g. State Exhibits 25 and 29*.
      - But I invite your attention to photos of the driver's side window.
        - Confront with photo of driver's door and window.
          --*State Exhibit 47*.
        - That side window is totally intact, isn't it.
        - So despite your testimony, both windows were not busted out—were they?
- *Ran When Shooting Began*
  - So you could not see?

*Destruction of Evidence*
- And your first thought was to destroy all the evidence.
- What evidence did you destroy?
  - *Ski Mask*
    - Expected to hide this evidence of the crime to avoid prosecution.
  - *Gun*                    (His statement denies gun—does not sound true)
    - *Did you have a gun*.
      - →*If he Denies Gun*:
        - Not much of a robber unless you have a weapon.
          - Gun needed to project fear into the person robbed.
        - Need a gun in case the person robbed has a gun and comes out blazing.
          - You have seen that happened, haven't you?  (His answer is irrelevant.)

5

- →*If he Admits Gun*:      (On direct, he admitted he had unloaded .22, which was hrown down a drain. RR Vol. 15, p. 101, 119)
  - Now you failed to mention this in your sworn statement to police.
  - In fact in your statement to police, you went to great lengths to deny that you had a gun.
    - And you made that statement that you had no gun under oath?
    - Some oath you have taken here today?
- What kind of gun did you have?
  - That kind of gun is a deadly weapon?
  - Such a caliber of gun can kill a person?
- And the gun was loaded, wasn't it?
  - →*If He Denies Gun Was Loaded*:
    - ***Ridicule Him***: So you are such a highly successful robber that you can use an unloaded gun.
    - And since the gun was unloaded, then, you turned the gun over to police, *so they could verify you version*.
      - →*If he did turn in weapon and the caliber differs from murder weapon*:
        - →Back off immediately.
      - →*If he did NOT  turn in the weapon*:
        - So all we have is the word of a convicted felon and drug addict?
        - What happened to the gun?
          - Did you try to destroy or hide the gun?
          - So you didn't have want any gun coming back to tie you into a shooting?
            - You will agree with me that action is pretty strange for a guy who claims, heavens-to-betsy, me no have gun.
  - →*If He Admits Gun Was Loaded*.
    - Now that makes sense if you are a robber.
      - That really conveys fear into a victim.
      - That really can put action into your threat.
      - And if the victim comes out with a gun or fighting, you can put the jerk down with several uncomfortable bullet holes.
- **Gloves**→Matters not that he denies→plants in jurors' mind re lack of fingerprints
**Caught by Police**
- Now police caught you running away from the crime scene.
- Had you thrown away that evidence (repeat above, if any) that you had on you.
- And you all you merely did was ***RUN AWAY***.      (police report)
  - You took flight.
  - Your flight was an admission of guilt wasn't it.
  - And you told the officer that you had been a robbery victim.  (Policeman's report)
    - For a guy *who had just murdered someone*, **you** really went to great lengths to disengage yourself from your crime.
      - →*If He Denies he Murdered Anyone*: Excuse me, sir, what did you plead guilty to?
- And the officer saw that green vehicle window glass on your clothes? (App'x Tab 23, 3-9-04, 9:50 a.m. Discovery notes from review of homicide

6

report, 12 pages of notes, page 7)(Told to produce admission)

***Hold in Reserve***: You can hide your evidence of your crime (e.g. mask, _____),
but you failed to hide that broken glass, didn't you?

- And since you were close enough to have broken glass on you,
  and since (the photos show)(you admit) you were on the passenger side door,
  that shows that you were on the side of the car where JR was gunned down?
    - It shows you were *not* at the driver's door.
    - ***That broken glass on you shows you were the shooter, doesn't it***.

### Who was Arrested:

- You were caught near the crime scene.
- Debra Espinoza was caught at the crime scene.
- Juan Castillo was caught at or near the crime scene that night.
    - No weapon has ever been trace to this crime.

### Taken to Police

- You were taken to the Magistrate's Office.
- There you saw your arrested cohort Debra Espinoza?
    - →***Backup***: Debra's 12-04-2003 Statement, p. 3, ¶ 2: "After I gave my statement,
      I was taken to the Magistrate's Office and arrested for my warrant. While
      I was at the Magistrate's Office, I saw Frank [Gonzales] through the window.
      He was in a cell with a bunch of other men. As I walked past, Frank made a
      motion putting his hand across his mouth, like I was supposed to zip my lips.
      I motioned like I would keep silent and not talk just to get him away from me.
      Then I was placed into a holding cell right next to the one Frank was in. I didn't
      go up to the window, but other girls were telling me that a guy in the next cell
      wanted to talk to me.
- **And while you were at the Magistrate's Office, you saw Debra Espinoza?**
    - The same Debra Espinoza you conspired with to rob JR?
        - And you made a motion to her by putting his hand across his mouth.
            - You wanted her to not implicate you about the shooting?
                - That was because you had something for you to hid.
                - For lack of a better term, you was trying to obstruct justice.
                - You were trying to save your skin.
- And Debra motioned back to you that she would keep silent.
    - So she too had something to hid? She was also obstructing justice.
- In fact, you told the police that "that fucking bitch, it was that whore's idea to do it"?
  (App'x Tab 23, 3-9-04, 9:50 a.m. Discovery notes from review of homicide
       report, 12 pages of notes, page 7)
- And you gave a statement to the police.
    - In that statement you proclaimed that you had told the truth.
        - →***Backup: His Statement of Dec. 6, 2003, p. 2, ¶ 2***: I decided to tell the
          truth because I know that I didn't shoot anybody …"
            - but you did not disclose your wife.
            - And you said that you didn't shoot anybody.
                - Despite having all that busted out car glass on you.

7

# Q&A of accomplice

# Debra Espinoza

---

## Prepared by Habeas Attorney

## to show what cross-exam

## could have been.

**HABEAS ATTORNEY'S**
**DRAFT Q&A OF ACCOMPLICE DEBRA ESPINOZA**
**Based on her 2 of 4 statements in Attorney Callahan's filed,  Police Reports in**
**Attorney Callahan's file,**
**Statements or notes of other Witnesses in Callahan's file,**
**and her direct Testimony**

*Drug Background—Addiction—Supporting Drug Habit*
- Now as you stated in your direct testimony (RR Vol. 17, pp. 28-29):
  - You dropped out of middle school in the eight grade.
    - And as a eighth grade dropout, you had no real job skills.
  - In fact, you had been living at home with your mother (*Id.*, p. 29).
    - You  even in your 20s you basically depended on your mother to:
      - Provide a roof over your head.
      - To keep you supplied with food.
- And as you stated in your direct testimony (*Id.* p. 30)
  - ["I was …] You were into drugs real bad.
    - And when you said drugs, you mean illegal drugs.
    - And by illegal drugs, you mean those drugs that the law forbids and provides for a prison term for their use or sell.
  - And specifically, you were using crank and methamphetamine.
    - Those are some of the most addictive drugs, aren't they?
      - And certainly you were addicted to these drugs.
  - And you regularly used other drugs?
    - What were those drugs?
      - Cocaine?
        - Powder or crack/ice>
          → If crack:  And crack/ice is very addictive?
      - Heroin?
      - Marijuana?
  - You ingested these drugs into your body?
    - You smoked it?                                            (*Id.*, p. 30)
    - You snorted it?                                           (*Id.*, p. 30)
  - But you used these drugs on a daily basis.                  (*Id.*, p. 30)
    - You used these drugs on a daily basis?                    (*Id.*, p. 30)
      - It was common for you to use these drugs on more than once occasion during a day?
  - You couldn't function without these illegal drugs?          (*Id.*, p. 30)
  - You were addicted to drugs.
- These drugs affected your judgment?
  - Your intelligence?
- ***And to support you drug addiction, you had to engage in criminal activity yourself?***
  → *If She Admits*:
    - Shoplifted.

1

- Engaged in prostitution.
- Sold drugs yourself.

*Establishing Statements She Made for Police*
- You made a number of statements to San Antonio Police.
  - How many statements did you make?        (4)
  - You made written statements to the police?
    - December 4, 2003 (4-pages)(given to Det. L. Spiess)
    - December 7, 2003 (2-pages)(last statement given to SAPD)
- Each of your statements were typed?
- You were permitting to read these typed statements before you
  signed them?                                      (Commitment to Statements)
  --*Backup*:
    → 12-04-2003 Stmt, p. 4, last ¶: "I have read and signed this statement because
      it is the truth."
    → 12-03-2003 Statement, p. 2, last ¶: "The reason I didn't tell the whole truth
      in my first statement is because I am in love with, and afraid of, Juan Castillo.
      I am in love with him because **he has been my inspiration to get off drugs**,
      and I am afraid of him because of his past.  But I have decided that I have to
      tell the truth."
- You were placed under oath at the time you made those statements.
  - That oath required that you tell the truth, the whole truth, and nothing
    but the truth?
- And this is the same oath that you took today in this court?
  - And you have lied in your statements while under oath?
  - So the reality is that you have a history of lying under oath?
    - And this includes lying about very serious things.
      → *If She Asserts She was scared*:
      - Come now, Ms. Espinoza:                    Trilogy:
        - You steal to support your drug habit, and *that does not scare you.*
        - You engage in criminal drug activity, and *that does not scare you.*
        - You have just admitted that you set up JR to be robbed,
          and *that did not scare you.*
        - Indeed in your first statement of December 4, 2003,
          True you said that you were afraid of Frank Gonzales?
          --*Backup*:
          → P. 1, ¶ 2, line 9: "After I agreed to do this, I kinda wanted
            to back out of it, *but I was afraid of Frank*."
            - In that first statement, you only said you were afraid of
              Frank Gonzales.
      - And you gave had good reason to be scared of Frank Gonzales
        haven't you?                       (use her statement o attack FG)
        - True *Frank Gonzales has admitted to you that he robs
          people, steals, and shoplifts to support a drug habit*?
          (Admissibility:  Statement against interest.
                                TEX R. EVID.  803(24)(dirty up Frank G)

2

--*__Backup__*: Dec. 4, 2003 Stmt, p. 1, ¶ 2, line 1+:
"*__He has told me that he robs people__* and I know that he
steals and shoplifts to support his drug habit."

*__Economidy Habeas Counsel Tactic__*:
- **If Debra tries to counter-attack that she was scared of Juan**,
go to the Reserve Q&A at the end on "*__Fearful of Juan__*" to impeach.

## *Planning The Crime with a Fellow Criminal Frank Gonzales*
- Now you knew that Frank Gonzales robs people *before this* night?
  - **But you associated with him any way.**                    (Commence trilogy)
- And Frank Gonzales asked you if you knew anybody with money?
  - You knew he was looking for someone to rob?
    - *But you helped him anyway*?
  --*__Backup__*: Dec. 4, 2009 Statement, p. 1, 2d ¶, line 5+
  "Frank came by my house on Tuesday night. It was between 10 pm and 12 pm.
  He asked me if I knew anybody with money. He said that he was going to rob
  them and that he would give me part of the money. I was supposed to
  get the guy to take me to Clamp Street, park and have sex with him and **Frank**
  would come and rob them. *As far as I knew, he was going to be alone.*
  --*__Admissibility__*: Statement made during & in furtherance of conspiracy.
  TEX R. EVID. 801(e)(2)(E).
- Frank Gonzales promised you a share of the money he robbed?      (See above backup)
  - And you decided to help Frank *anyway*, despite your fear of him.
- Now you knew that robbery was an inherently dangerous act.
  - Things go wrong.
  - But you decided to participate *anyway*.
- You knew a friend that could be robbed?
  - You were willing to help rob your friend as long as you got
  your 30 pieces of silver?               (*__Backup__*: Matthew 26:14.)

## *Setting up Tommy Garcia (JR)*
- Before you suggested robbing JR, you first called your friend **Robert "Rob"
Jimenez**?
  --*__Backup__*: Jimenez Statement and his direct testimony before Debra testified
  (RR Vol. 16, pp. 39).
  He says that she twice paged him and he refused to respond. Then in his presence
  JR got a call from Debra Espinoza. Inexplicably, she calls Jimenez right after the
  shooting. This suggests some collusion.
  - **And you and Rob decided to set up your mutual friend JR.**
    --*__If she admits, follow the lead__*:
      →He set up JR.
      →That's why you called Rob Jimenez right after the shooting
      and told him that "They shot JR."
- You had known JR for years?
  --*__Backup__*: Dec. 4, 2003 Stmt, p. 1, ¶ 2, line 10+

3

"I called my friend JR. I have known JR *for years*. I now know that his real name is Tommy Garcia, but at the time, I just knew him as JR. I called him and asked him what he was doing, and he said nothing. I asked him if he wanted to come over. He asked me if it would be "worth" and I said it would." (Says she will call him back when she gets dressed. She calls back in 5 minutes.) "Usually when we get together, we rent a room. *JR said he didn't have enough money for a room*, so we decided to just do it in his car."

- You had known his name as Tommy Garcia for those years.
  - --*When she Denies*:
    - But you had had sex with him in the past.
    - You usually went to a motel when you had sex.
      - On more than one occasion in the past?
        - So you are telling this jury that *you had know the deceased for years and had even had sex with him on multiple occasions, but you didn't bother yourself to learn his name*?
        - **But for 30 pieces of silver you could set him up.**
- True JR told you that he did **not** have money for a room.
  - But the plan was for you to get him in his car out on lover's lane.
  - And if JR had money for a room for sex, then I guess you would have had Frank Gonzales to break into the motel room for the robbery.
    - Isn't that what Frank Gonzales does when he robs people? (p. 1, ¶ 2, line 1).
      - --*If she admits*:  So you have helped Frank rob other persons in the past.
        - --*If she denies*:  *Of Course, you haven't.*   (infer she had)
- Now you say that JR told you that he did **not** have money for a motel.
  - --*Backup*:  See above statement.
    - And once you learned that he had no money, *you did not call off the robbery*.
      - You went on through with the robbery *anyway*.

## Pickup and JR May Get Gun
- Now JR picked you up in his car.
- JR first went by his mother's house.
- JR ran inside that house to get something.
- *You figured JR went inside to get a gun*.
  - --*Backup*:  Dec. 4, 2003 Statement, p. 1, ¶ 2, 7th line from bottom to 3d line:
    "When we left my house, we drove to JR's mom's house on Yukon St. JR ran inside and was inside a few minutes. I asked him what he was doing, and he said *he had to get something*. I didn't ask him what he got, *I just figured he got a gun*. JR sells drugs, that's how he gets his money. He sells weed and coke. I know this because years ago I got some weed from him. He sells to everybody in the neighborhood, and he sometimes carries a gun with him. I didn't see him with a gun that night, but I have heard him talking about having a gun."
    - And with such a belief, that certainly increases the likelihood of danger doesn't it?

4

- If JR had a gun, it would increase the risks to him.
- If JR had a gun, it would increase the risks to Frank Gonzales.
  - And you decided that your 30 pieces of silver cut was worth the risk to everyone else.

**The Sex Scene**
- You told JR where to park?
  - Because you knew where the robbery was to go down?
- You were setting up your former sex partner and drug supplier for this robbery?
- He drove in his Camaro.
- He rode in the front passenger seat.
- You and JR parked on Clamp Street.
- **Frank Gonzales' game plan was for you to engage in sex and Frank would come up and rob JR.**
  - **--Backup with Dec. 4, 2009 Statement, p. 1, ¶ 2, line 7+**
    "I was supposed to get the guy to take me to Clamp Street, park, and have sex with them, and Frank would come and rob them. *As far as I knew, he (Frank) was going to do alone.*"
    **--Backup with Second Statement of Dec. 7, 2003**, p. 2, ¶ 2:
    " Juan and Frank ha been planning to rob somebody for about three days. *They* were asking me to find somebody who had money and who would be an easy target to rob. *We* decided to do it on Tuesday. On Tuesday, *I* called JR like I said in my first statement, and he agreed to meet with me. Frank and Juan came to my house in a light blue little four door car. *Frank's wife was driving the car*. I don't know her name, but she is about Frank's age. She is real think and has messed up teeth. *We* have planned out that I was supposed to get JR to park on Clamp Street and get him on the passenger side of the car, and I was supposed to try and make sure that his *pants were down*. I assumed this *because then JR wouldn't be able to run or fight very well.*
    - Now you never mentioned Juan Castillo in your first statement.
    - And you never mentioned Frank Gonzales' wife as the accomplice driver in your first statement.
      - But Frank Gonzales wife was *as filthy with guilt as you were.*
        - The plan was to get JR into your passenger seat.
        - With his pants down.
        - That way JR would not be able to run or fighter very well? (*see above*)
          - So the plan that *you executed* for your 30 pieces of silver was to make JR as vulnerable as possible?
- You were to engage in fellatio?
  - That is, you were sucking on his penis in the *passenger front seat* of the Camaro.
  - You were on top of JR.
    - So he had no room to escape? And you had him in the vulnerable position you planned.

5

*The Robbery*

--*Backup*: **December 4, 2003 Statement, p. 2, first lines**:

> "JR moved to the passenger side of the car. I got on top of him and pulled his pants down. I started giving him head. I had been doing this for about 15 minutes when it happened. *The first thing that happened was both side windshields broke.* It was so loud that I don't know if it was a gunshot, or the windows broke out by something hitting them. *Both car doors opened at the same time.* Then I was pulled out of the car by a guy dressed in dark clothing."

--*Backup: December 7, 2003 Statement, p. 1, ¶ 3, line 2+*:

> "We drove there and started to mess around and that's *when both side windows* were broken out and Frank and Juan were doing the robbery. ... Frank pulled me out of the car and threw me on the ground just like I said in my other statement."

- *Now what windows were busted?* (*She said both in both statements—see above*)
  --*If she Says Just one, impeach as follows*:
  - Now you previously provided police two statements.
    - Both statements were under oath to tell the truth.
    - Your first statement was dated December 4, 2003?
    - Your second statement was dated December 7, 2003?
      - And in your second statement you said that you had corrected some items in your first statement, but your second statement told the whole truth.
      - And in both of your statements, true you said that the robbers *broke out both side windows*.
  --*If she says both side windows, impeach as follows*:
  - And you are telling the truth today that *both side windows were busted out.*
    - →*Habeas Counsel Note*: Each side has only a single side window, *See e.g.* State Exhibits 45 and 47.
    - Now in the discovery process, I was able to view photographs on JR's Camaro that were taken by police on the night of his death? (Set her up for the fall).
      - Now the glass was knocked out of the passenger side door? *See e.g. State Exhibits 25 and 29.*
      - But I invite your attention to photos of the driver's side window.
        - Confront with photo of driver's door and window.
          --*State Exhibit 47.*
          - That side window is totally intact, isn't it.
          - So despite two sworn statements and your sworn testimony today, both windows were not busted out—were they?
- *And you testified a moment ago on direct, that you were pulled out of driver's seat and thrown to the ground—is that correct?*
  --*Backup*: (RR Vol. 17, p. 40: They busted out the window. Both doors opened at the same time. *Frank pulled me out of the driver's seat and threw me on the ground.*

6

- Now in the instant before this, you were performing oral sex on JR?
- Both of you were in the front passenger compartment?
- You were on your knees? ….. in the front passenger floorboard?
  - And you want us to believe that you were hauled out of the *driver's door*.
    - →*Get Commitment*.
    - Now that Camaro has a console between the bucket seats on the driver's side and the passenger side?
    - And that console in the middle had a gear shift lever and knob that sticks **up** from the console?
      - →*If she denies*: Confront with photograph. *State Exhibit 49.*
    - And you would have to get past the steering wheel on the driver's side.
      - *Exploit her Version*
        - Now if you are on the ground on the driver's side of the car—**ON THE GROUND**—you are not in a position to see *what you said that you saw on the other side.*

Exploit her Lack of Sleep
- Now prior to this shooting, True you had not been asleep for quite some time?
  --Backup: December 4, 2003 statement, p. 3, ¶ 3, line 1:
  "I have not been able to eat, and I have not been sleeping."
- And how long had you been without sleep up to the time of the shooting?
  --*Backup*: RR Vol. 77, p. 49 (Why didn't you tell the truth? I was in shock.
  *I hadn't slept in like six days*.)
  →Her Statement to police gives defense counsel advice to go to this area.
  - Did I hear your testimony correctly?
    - This was because you were hyped out on drugs.
    - So you are feeling the effects on **X**-days accumulation of drugs on your mind?
  - And this situation was compounded by your not having any sleep for **X**-days?
    --*If She Quibbles*
    - Commit her to the number of days lost sleep.
      - So you were just saying **X**-days to try to impress the jury.
        --*If Yes*: So you will say things that are not necessarily true just to impress the jury.
  - You will agree that anyone who has gone without sleep has problems with memory …. problems with perception … problems with recall … problems seeing things through a car when one is on the other side of the car on the ground.

7

## Post-Shooting and Calling of Rob Jimenez
- After the shooting, you ran to a nearby neighbor's home and banged on the door.
- You used the phone.
- And according to the testimony of Rob Jimenez who testified earlier, the person who you called was Rob Jimenez.
  - This was the person you called *to set up* your sex buddy JR.
  - And it was because of Jimenez's involvement that you called him about the shooting, isn't it?        (He answer is irrelevant—she implicates Rob regardless of her admission or denial.)
    - And in both of your statements to the police, you failed to mention this phone call to Rob Jimenez.
      - You intended to cover up for Rob's involvement, didn't you.

## The Heroine
- **Now you have given a story that you try to portray yourself as a heroine and as a victim, have you not.**
  - You did not even call 9-11 for JR.
  - You did not give him first aid.
  - You ran off and let … him … bleed … to …death, didn't you?
- And you certainly are the victim here, are you?
  - You set up the victim to be robbed?
    - In any robbery, there is great risk of serious bodily injury or death.
      - But you did it any way.
    - You were in the game for your share of the money.
      - You wanted your 30 pieces of silver—didn't you.

## Communicating with Frank Gonzales at Magistrate's Office—Dirty up Frank
- **And that night you were taken to the City Magistrate's Office and Court.**
  - →**Backup**:  Her 12-04-2003 Statement, p. 3, ¶ 2: "After I gave my statement, I was taken to the Magistrate's Office and arrested for my warrant.  While I was at the Magistrate's Office, I saw Frank [Gonzales] through the window. He was in a cell with a bunch of other men.  As I walked past, Frank made a motion putting his hand across his mouth, like I was supposed to zip my lips. I motioned like I would keep silent and not talk just to get him away from me. Then I was placed into a holding cell right next to the one Frank was in.  I didn't go up to the window, but other girls were telling me that a guy in the next cell wanted to talk to me.
- **And while you were at the Magistrate's Office, you saw Frank Gonzales?**
  - The same Frank Gonzales you conspired with to rob JR?
    - And you saw this Frank Gonzales motion to you by putting his hand across his mouth.
      - You interpreted this to mean you were supposed to zip your lips.
        - So Frank Gonzales had something for you to hid.
        - For lack of a better term, he was trying to obstruct justice.
- And you motioned back to him that you would keep silent.
  - So you too had something to hid?  You too were obstructing justice

8

*Debra's Ability to Communicate*
- You were released on bond.
- You talked on the phone to all sorts of persons.
  - You talked to your mother.   (Dec. 4, 2003 Stmt, p. 3, ¶ 3)
  - Talked to your sister Diana Robles.
  - Many other persons.
- Talked to them about what happened that night?
  - →*If Debra Admits*:
    - So you statement in your December 7, 2003 Statement that  gave a contrary statement?
      - →*Backup*:  Statement of 12-07-2003, p. 1, last ¶, last sentence:
        "We never talked about what we were going to do after it was over, and ***I have not talked to anybody about this***."
        - Did you make that prior statement?
          - So you were talking to Frank Gonzales' relatives.


*Hold in Reserve*


- *If She Says She Saw Juan Shoot JR.*
  - Now you claim that you were thrown on the ground by the driver's door?
  - And that Frank put his foot on your back and pushed you down.
    - →*Backup*: *December 7, 2003 Statement, p. 1, ¶ 3, line 2+*:
      "We drove there and started to mess around and that's ***when both side windows*** were broken out and Frank and Juan were doing the robbery. … Frank pulled me out of the car and ***threw me on the ground just like I said in  my other statement***."
    - →*Backup:  December 4, 2003 Statement, p. 2, line 12 from top*:
      "By that time, I ***had been thrown on the ground, and Frank put his foot on my back to hold me down***.  I don't remember his exact words, but it was like stay on the ground and don't look up."
  - True the purpose of doing that was so you could *look up and see what was happening*.
    - And as a result, with you on the ground and your face facing the ground you did not see any one shoot anyone, did you?
      - →*If She Says she could see:*  Go into inability to see through Camaro.
      - →*Backup:  Her Statement of December 4, 2003, p. 3, past ¶*:
        "**I don't know if one or both of them had guns, or which one did the shooting.**"


- *Fearful of Juan Castillo*
  - You say you were fearful of Juan Castillo.
    - But in your first statement, you never mentioned Juan Castillo.
    - Indeed in your first statement, you said you were fearful of Frank Gonzales. (December 4, 2003 statement, p. 1, ¶ 2, line 9).

- And if you were fearful of Frank and *you mentioned* Frank in your first statement, then there is *no rational reason not to mention anyone else*, was there?
- And the reality is that *you cared more about yourself than the dying man you set up.*
  - --*Backup: December 4, 2003 Statement, p. 2 , ¶ 1, 5th line from bottom.*
    "I told him (guy in house) that I had kids and I was wanted on warrants and I couldn't wait.?          (MTR per court records)

- <u>Her Plea Bargain</u>:                    (from court records)
  - **Offense**
    - Not capital murder
    - Not murder
    - Aggravated robbery.
  - **Punishment**
    - Not death penalty
    - Not life without parole.
    - 40 years
      - Will be eligible for parole in 20 years.

*Notes for Miscellaneous Items to Cross on That were Raised During Direct Exam:*

- _____

- _____

- _____

- _____

# Exhibit 28



**Vincent D. Callahan**
Attorney
Laurel Heights Station

San Antonio TX

May 6, 2005

Juan E. Castillo
Bexar County A.D.C. CD-16

San Antonio TX 78207

RE:  *State of Texas v. Juan E. Castillo*, No. 2004-CR-1461-A
186th Judicial District Court, Bexar County, Texas

Dear Mr. Castillo:

I received your letter postmarked 5/2/05. Francisco Gonzales entered a plea bargain agreement on 5/3/05 calling for 40 years incarceration for murder and requiring his truthful testimony during your trial which has been set for jury selection on 7/15/05. In the main the State proposes at the guilt-innocence phase to offer the testimony of Francisco Gonzales, his mother, and his girlfriend and perhaps two other family members against you; at the punishment phase the State will offer Francisco Gonzales' testimony that you had been involved in other aggravated robberies and on other unadjudicated murder.

That all of he above evidence comes from Francisco Gonzales, who has a clear motive to lie in order to avoid the death penalty will be presented to the jury on cross-examination of all of the above said witnesses.

Attorney Bill Harris will come to visit to discuss ideas that he has about the trial of your case.

The prosecutor no longer believes that the second ski mask is relevant to his case and will likely cancel his second request for DNA analysis thereon.

Juan Castillo                                          Page 2
May 6, 2005

     The prosecutor and I will enter into a stipulation regarding all of your educational records which will be admitted during the punishment phase of your trial if any.

     The main issue in your case is still that covered by Article 38.14 Texas Code of Criminal Procedure (a conviction can not be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense). Article 38.14, however, has no application to evidence of extraneous offenses offered in the punishment phase.

     Please see to it that you have good clothing to wear to court.

     Jury selection generally takes 2-3 weeks before the trial actually starts. I will stay in touch.

Sincerely,


Vincent D. Callahan

VDC/ar

CC:   Bill Harris, Esq.

# Exhibit 29

# Vincent D. Callahan
## Attorney
Laurel Heights Station

███████████

San Antonio TX 78212-9998

███████████

January 31, 2005

Juan E. Castillo ███████
Bexar County A.D.C. CD-16
███████████

San Antonio TX 78207

RE:   *State of Texas v. Juan E. Castillo*, No. 2004-CR-1461-A
        186th Judicial District Court, Bexar County, Texas

Dear Mr. Castillo:

The 186th District Court gave me a copy of the letter which you had mailed
to it; it has also informed me of your two pro se motions requesting bond red---
and to dismiss Court appointed attorney.  I had previously informed
Trial Court denied my request on your behalf for a bond re *
indigent accused is not permitted generally to ch~
attorney. The law also prohibits hybrid
himself with an attorney of re-
represent himself alone

When we go to co.
trial setting of 3/28/05.

I have asked the seco
a the highest probability that
your case.

I will write to your alibi
willing to testify on your behalf.
that if he testifies as you have in
prosecutor with the tape recorded
on 12/3/03 at 1810 hours.

Juan Castillo                                                                    Page 2
January 31, 2005

     In the very near future I expect to receive the mental health evaluation from
Dr. Jack Ferrell and I will send it to you.

     Regarding the punishment phase of your case, if any, I intent to ask the
prosecutor to enter into a stipulation of evidence agreement such that the jury will
be allowed to read the Presentence Investigation Report (PSI) of 3/12/04 because it
state's succinctly the dysfunctional family environment in which you were raised
which may assist the jury in answering the "any mitigation" special issue in the
affirmative such that you do not receive the death penalty. This report does contain
a complete review of your criminal history, but the State will offer said history
regardless of any proposed stipulation.

     I know that it is very difficult for a man in your circumstance to face a
capital murder prosecution while waiting in the jail. Your contribution and your
time to act in the case will be your testimony to the jury wherein you deny killing
Tommy Garcia Jr. and explain that at the time of the murder you were with Carlos
Castillo. If your testimony is believed you will be found not guilty.

     I will use my best wits to show on the record that the State has failed to
either prove its case or prove facts sufficient to corroborate the testimony of any
co-defendant. I will stay in touch.

Sincerely,

*Vincent D. Callahan/ar*
Vincent D. Callahan

VDC/ar

Cc: Bill Harris, Esq.

# Exhibit 30

# Vincent D. Callahan
## Attorney
### Laurel Heights Station
█████████████████████████

September 16, 2004

Dr. Jack Ferrell
███████████████████████
San Antonio TX █████

     RE:   *State v. Juan Castillo*, No. No. 2004-CR-1461-A
           186th Judicial District Court, Bexar County, Texas

Dear Dr. Ferrell:

     Thank you for agreeing to examine Juan Castillo for competency, mental retardation, sanity and mental illness. Please find enclosed a file stamped copy of the Order authorizing you to conduct said examination.

     Also find enclosed copies of Mr. Castillo's pre-sentence investigation report from his earlier federal case and the indictment. If you need copies of my discovery notes I will send them to you. Broadly speaking Mr. Castillo is accused of being the trigger man who along with Francisco Gonzales and Debra Espinoza murdered Tommy Garcia for his money while Tommy Garcia was in his car with Debra Espinoza for sexual purposes.

     The case is tentatively set for March 2005. Mr. Castillo has denied any guilty and asserts a time specific alibi with another Mr. Castillo (not related). I suspect that Mr. Castillo is anti social but I do not know why. Perhaps you could help me in this regard also. I will stay in touch.

Sincerely,

*Vincent D. Callahan /ar*
Vincent D. Callahan
VDC/ar
Cc: Bill Harris, Esq.

MAR-29-2005 TUE 12:38 PM                                                   P. 001

# Jack G. Ferrell Jr., Ph. D.



**DATE:** March 29, 2005

| | | |
|---|---|---|
| **TO:** | Mr. Vincent D. Callahan | **FROM:** |
| Attorney at Law | | |
| **PHONE:** | | **PHONE:** |
| **FAX:** | | **FAX:** |
| **PAGES:** | 14   (Including cover sheet) | |
| **RE:** | Castillo | |

**Comments:** Please call if you do not receive all of the pages.

Here are the Draft Reports, please call with any questions.

Thank you
Shannon

The documents accompanying this facsimile transmission contain confidential information that is legally privileged. The information is intended for the use of the recipient named above. If you receive this transmission in error, please immediately notify us by telephone to arrange for the return of the original documents to us. You are notified that any disclosure, reproduction or distribution for the taking of any action in reliance on the contents of this facsimile information is strictly prohibited.



# Jack G. Ferrell Jr., Ph.D.
### Clinical and Forensic Psychologist

Telephone ▮▮▮▮▮▮▮▮                              Fax ▮▮▮▮▮▮

E-Mail: ▮▮▮▮▮▮▮▮▮▮▮

---

## CAUSE NO: 2004-CR-1461          DRAFT

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE DISTRICT COURT** |
| | § | |
| **VS.** | § | **186th JUDICIAL DISTRICT** |
| | § | |
| **JUAN CASTILLO** | § | **BEXAR COUNTY, TEXAS** |

Based on the attached report of the evaluation of the above-captioned defendant conducted by this examiner, the observations and findings from that examination are as follows:

1.) Defendant **is** mentally competent to stand trial.

2.) Defendant **is not** mentally ill.

    a) Defendant **does not** require observation and/or treatment or hospitalization in a mental hospital for his/her own protection or the protection of others.

    b) A certificate **is not** attached stating the medical diagnosis.

3.) Defendant **is not** mentally retarded, as defined in the Mentally Retarded Persons Act (Article 5547-300, Vernon's Civil Statutes.)

_____
Date of Evaluation


DRAFT                                      _____
Jack G. Ferrell, Jr., Ph.D.
Clinical Psychologist

DRAFT

DRAFT

# Jack G. Ferrell Jr., Ph.D.
Clinical and Forensic Psychologist
14310 Northbrook, Suite 120
San Antonio, TX 78232
Telephone (210) 499-5025          Fax (210) 499-5825
E-Mail: DrFerrellsOfc@aol.com

DRAFT

March 7, 2005

Mr. Vincent D. Callahan
Attorney at Law



RE:   Juan Castillo                         DRAFT
      Cause Number 2004-CR-1461
      Competency Evaluation

Dear Mr. Callahan:

Pursuant to the Order for the appointment of mental health or mental retardation authority to examine the defendant with regard to his competency to stand trial, his mental illness, his mental retardation, and/or his sanity, the evaluation to determine competency to stand trial was undertaken beginning on or about January 5, 2005. Prior to the evaluation and interview, Mr. Castillo's rights were explained to him as well as the nature of the competency evaluation. He stated that he understood the purposes and limits of confidentiality with respect to this examination of his competency to stand trial. Mr. Castillo's attorney of record is Vincent D. Callahan.

The examination consisted of a clinical interview and mental status examination, a review of his medical records while in detention and offense report. Additionally, attorney correspondence, Court Orders, True Bill of Indictment and a prior Presentence Investigation Report were reviewed. The examination was sufficient to produce findings that would enable the examiner to determine the competency of Mr. Castillo to stand trial.

## PERSONAL HISTORY:

As provided by the defendant, Mr. Castillo is a 23-year-old, White/Hispanic, male, born on ████████ He reported his social security number as ████████ and his SID # to be ████████ He states that his current address is ████████ San Antonio, Texas (his mother's address). He currently is incarcerated in the Bexar County Detention Facility where he was placed following his arrest on 12-10-2003. Mr. Castillo indicates that he is approximately 6 feet in height and weighs approximately 165 pounds.

DRAFT

DRAFT

Mr. Castillo indicates that he is one of two children born to his parents, Elias Mojica Castillo and June Ridgeway Castillo. His sister is reported to reside in Whitman, Arizona and they have very little contact. He reports that he was reared by his mother and relates that his childhood to have been somewhat unstable with multiple moves noting that he resided in Arizona, California, Ohio before returning to San Antonio Texas in approximately 1994. He states that his parents divorced when he was very young and he had little or no contact with his father until he was age 13. When the mother returned to San Antonio, the family resumed living together although the parents did not remarry. He relates that both parents have multiple health and medical problems. Hew relates his mother has carpal tunnel syndrome, has had a knee replaced, back surgery, diabetes and other injuries from a car accident. His father experiences distress and disability secondary to severe emphysema.

With respect to education he states that he attended Kingwood Elementary School in Kingwood, Arizona completing the 6th grade and withdrawing from school in the 7th grade. He reports that he attempted school at several other locales but did not complete any further years of education and dropped out while still placed in the 8th grade. He reports that he did not return to school thereafter but did take the General Equivalency Diploma (GED) classes while incarcerated, but that he does not have a GED. He states that difficulties he experienced in adolescence were related to social problems noting that as a youth he was involved in multiple fights and disputes and received counseling at school while in the 5th grade.

Mr. Castillo reports that he has not served on active duty in the military. He has been employed in a variety of settings to include a general utility worker with Aramark Corp. from October 12, 2000 until March 22, 2001, a custodian with B&R Building Maintenance Inc. from September 28, 2000 until October 11, 2000, he worked for Weiners (a department store) for a month, Tito's Restaurant for two months, and Grady's BBQ briefly in 1999. Difficulties he has experienced in the workforce appear to be related to being arrested at work, problems with management and lying on his application. Generally, the employment was sporadic and provided minimal wages in each setting.

Mr. Castillo relates that he has been involved in two long-term relationships; each of which resulted in the birth of a child. He and Jessica Ramirez were in a three-year relationship, but not marriage that produced a son, Juan, who is six years of age. He reports that the relationship was marked by conflict and that arguments resulted in several charges of domestic assault against him. He reports that he has had very little contact with his son. He married Priscilla Vera Castillo in March of 2002 and they have one child, Julian who is currently two years of age. Priscilla has an older son, age seven. Both children have been residing with the maternal grandmother as Priscilla has been incarcerated on forgery and burglary charges.

With respect to his legal history, Mr. Castillo relates that he committed juvenile offenses at 16-17 years of age (possession of a controlled substance and deadly conduct) as well as the aforementioned domestic assault charges. Charges as an adult include possession of firearms charges. He is currently charged with Capital Murder

DRAFT  2

and provided information regarding the alleged offense, the circumstances surrounding the offense in question.

**MEDICAL HISTORY:**                    DRAFT

Mr. Castillo indicates that he is not, under the care or being treated by a physician. He reports that he does not have a primary care provider. He states that he is not, prescribed any medications. Additionally, he reports or other records reveal that he is currently in good physical health. With respect to psychiatric difficulties, he reports that he has not received treatment or care.

**MENTAL STATUS EXAMINATION:**

Upon mental status examination, Mr. Castillo presents as a 23, year old man who appears approximately his current stated age. He is well nourished, dressed in detention clothing and presents as generally neat and appropriately groomed. He is oriented to person, place and time and exhibits no evidence of defect to attention span, concentration, immediate or remote memory. He provided good recall for dates, times and places of events as well as his then current age. He responded to the examiner in a forthright and direct manner. His reasoning, thinking and general cognitive processing appeared to be well within normal limits.      He denied any auditory or visual hallucinations, delusions, suicidal or homicidal feelings. He reports that he had never personally considered suicide, but provided that everyone does not like life at a certain time. He reported feelings, experiences and interactions consistent with his mood and circumstance. Affect and mood appeared to be frustrated, tense and mildly depressed. Mr. Castillo reported concerns regarding his arrest and detention, evidence provided by others in his case and other elements consistent with incarceration.

Mr. Castillo appeared to have a good and rather extensive fund of information and current events. He was able to make calculations, correctly provided meanings for two of three proverbs, and correctly responded to three of three differences and four of four similarities. Judgment was also noted to be within normal limits.

With respect to competency to stand trial, Mr. Castillo reported that he had a good and accurate understanding of the charges against him and the nature of the judicial process. He was aware of the roles and duties of a judge and jury, the opposing roles of the district attorney and his attorney as well as options with respect to pleas, the concept of plea bargaining and matters pertaining to verdicts and sentencing.

**SUMMARY:**                    DRAFT

Mr. Castillo clearly understands the charges that are pending against him, the general court process, functions of an attorney, district attorney, judge and jury as well as issues relative to plea bargaining and sentencing. He appears to be able to communicate well and articulately with respect to these charges and the circumstances leading to them. He has sufficient present ability to consult with his lawyer with a

3

reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him.  It is my opinion that he is currently legally competent and able to stand trial.

DRAFT

Respectfully submitted,

DRAFT

Jack G. Ferrell, Jr., Ph.D.
Clinical Psychologist

JGF/mm
cc:    file

DRAFT

4

P. 010



# Jack G. Ferrell Jr., Ph.D.
## Clinical and Forensic Psychologist

Telephone ▮▮▮▮▮▮▮▮▮▮▮▮            Fax ▮▮▮▮▮▮▮▮▮▮
E-Mail: DrFerrellsOfc@aol.com

---

March 7, 2005                                    DRAFT

Mr. Vincent D. Callahan
Attorney at Law

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     **RE:    Juan Castillo**
           **Cause Number 2004-CR-1461**
           **Sanity Evaluation**

Dear Mr. Callahan:

Pursuant to the Order for the appointment of mental health or mental retardation authority to examine the defendant with regard to his sanity at the time of the alleged conduct  to include his mental illness and his mental retardation, the evaluation to determine his Sanity  was undertaken beginning on or about January 5, 2005. Prior to the evaluation and interview, Mr. Castillo's rights were explained to him as well as the nature of the competency evaluation. He stated that he understood the purposes and limits of confidentiality with respect to this examination of his Sanity. Mr. Castillo's attorney of record is Vincent D. Callahan.

The examination consisted of a clinical interview and mental status examination, a review of his medical records while in detention and offense report. Additionally, attorney correspondence, Court Orders, True Bill of Indictment and a prior Presentence Investigation Report were reviewed. Mr. Castillo was also administered the following psychological testing instruments, and procedures: MMPI-2, MCMI-III, TSI, Projective Drawings, Sentence Completion Test and Feelings Inventory. The examination was sufficient to produce findings that would enable the examiner to determine the Sanity of Mr. Castillo at the time of the alleged conduct.

**PERSONAL HISTORY:**                              DRAFT

As provided by the defendant, Mr. Castillo is a 23-year-old, White/Hispanic, male, born on ▮▮▮▮▮▮ He reported his social security number as ▮▮▮▮▮▮▮▮ and his SID # to be ▮▮▮▮▮▮ He states that his current address is ▮▮▮▮▮▮ San Antonio, Texas (his mother's address). He currently is incarcerated in the Bexar County Detention Facility where he was placed following his arrest on 12-10-2003. Mr. Castillo

DRAFT

indicates that he is approximately 6 feet in height and weighs approximately 165 pounds.

Mr. Castillo indicates that he is one of two children born to his parents, Elias Mojica Castillo and June Ridgeway Castillo. His sister is reported to reside in Whitman, Arizona and they have very little contact. He reports that he was reared by his mother and relates that his childhood to have been somewhat unstable with multiple moves noting that he resided in Arizona, California, Ohio before returning to San Antonio Texas in approximately 1994. He states that his parents divorced when he was very young and he had little or no contact with his father until he was age 13. When the mother returned to San Antonio, the family resumed living together although the parents did not remarry. He relates that both parents have multiple health and medical problems. Hew relates his mother has carpal tunnel syndrome, has had a knee replaced, back surgery, diabetes and other injuries from a car accident. His father experiences distress and disability secondary to severe emphysema.

With respect to education he states that he attended Kingwood Elementary School in Kingwood, Arizona completing the 6th grade and withdrawing from school in the 7th grade. He reports that he attempted school at several other locales but did not complete any further years of education and dropped out while still placed in the 8th grade. He reports that he did not return to school thereafter but did take the General Equivalency Diploma (GED) classes while incarcerated, but that he does not have a GED. He states that difficulties he experienced in adolescence were related to social problems noting that as a youth he was involved in multiple fights and disputes and received counseling at school while in the 5th grade.

Mr. Castillo reports that he has not served on active duty in the military. He has been employed in a variety of settings to include a general utility worker with Aramark Corp. from October 12, 2000 until March 22, 2001, a custodian with B&R Building Maintenance Inc. from September 28, 2000 until October 11, 2000, he worked for Weiners (a department store) for a month, Tito's Restaurant for two months, and Grady's BBQ briefly in 1999. Difficulties he has experienced in the workforce appear to be related to being arrested at work, problems with management and lying on his application. Generally, the employment was sporadic and provided minimal wages in each setting.

Mr. Castillo relates that he has been involved in two long-term relationships; each of which resulted in the birth of a child. He and Jessica Ramirez were in a three-year relationship, but not marriage that produced a son, Juan, who is six years of age. He reports that the relationship was marked by conflict and that arguments resulted in several charges of domestic assault against him. He reports that he has had very little contact with his son. He married Priscilla Vera Castillo in March of 2002 and they have one child, Julian who is currently two years of age. Priscilla has an older son, age seven. Both children have been residing with the maternal grandmother as Priscilla has been incarcerated on forgery and burglary charges.

With respect to his legal history, Mr. Castillo relates that he committed juvenile offenses at 16-17 years of age (possession of a controlled substance and deadly   

DRAFT

conduct) as well as the aforementioned domestic assault charges. Charges as an adult include possession of firearms charges.  He is currently charged with Capital Murder and provided information regarding the alleged offense, the circumstances surrounding the offense in question.

## MEDICAL HISTORY:

Mr. Castillo indicates that he is not, under the care or being treated by a physician. He reports that he does not have a primary care provider. He states that he is not, prescribed any medications. Additionally, he reports or other records reveal that he is currently in good physical health. With respect to psychiatric difficulties, he reports that he has not received treatment or care.

## MENTAL STATUS EXAMINATION:            DRAFT

Upon mental status examination, Mr. Castillo presents as a 23, year old man who appears approximately his current stated age.  He is well nourished, dressed in detention clothing and presents as generally neat and appropriately groomed.  He is oriented to person, place and time and exhibits no evidence of defect to attention span, concentration, immediate or remote memory. He provided good recall for dates, times and places of events as well as his then current age.  He responded to the examiner in a forthright and direct manner.  His reasoning, thinking and general cognitive processing appeared to be well within normal limits.    He denied any auditory or visual hallucinations, delusions, suicidal or homicidal feelings.  He reports that he had never personally considered suicide, but provided that everyone does not like life at a certain time.  He reported feelings, experiences and interactions consistent with his mood and circumstance.  Affect and mood appeared to be frustrated, tense and mildly depressed. Mr. Castillo reported concerns regarding his arrest and detention, evidence provided by others in his case and other elements consistent with incarceration.

Mr. Castillo appeared to have a good and rather extensive fund of information and current events.  He was able to make calculations, correctly provided meanings for two of three proverbs, and correctly responded to three of three differences and four of four similarities.  Judgment was also noted to be within normal limits.

## PSYCHOLOGICAL TESTING:        -        DRAFT

Mr. was administered the MMPI-2 which is an objective personality inventory, which transforms an individual's responses into standardized T-scores.  These scores are then plotted onto personality profile sheets. Generally, scores above T-score 65 are considered significantly elevated; however combinations of elevated configurations of two or more scales are also interpreted. The test yields validity measures, basic clinical scores, as well as content and supplementary scale scores.  Mr. Castillo's profile reflected a valid performance; all validity scores were well within normal limits and not suggestive of significant exaggeration or problems in his performance resulting from test

3

DRAFT

taking problems or inability to read. All basic scales were within normal limits; there were no scales reflecting significant elevations. Secondary scales reflect some physical malfunctioning (Pm) which is indicative of possible depression and an elevation on the scale reflecting authority problems (Ap). None of the Content scales was elevated. Supplementary scales of Mac Andrew (Ma) and Over controlled Hostility were noted. These scales may reflect a tendency toward addiction proneness and as one who had exaggerated aggressive responses. Scales reflecting serious or incapacitating mental illness are not elevated.

The MCMI-III is a standardized objective personality measure in which response patterns are keyed to DSM IV categories. Responses to test items are transformed into Base Rate (BR) Scores, which are then plotted on profile sheets. Generally, scores above BR 85 are considered significantly elevated and scores between 75-84 are considered slightly elevated and suggestive of traits or difficulties. Additionally, scale elevations in combination with other scales are also interpreted. The test provides three validity-correction measures and 24 clinical scales grouped in five categories. Mr. Castillo's performance resulted in a valid performance in which he appeared to report responses in a desirable direction. None of the Clinical scales were elevated. This performance is not indicative of a serious mental or emotional disorder. All of the scale scores were within normal limits.

DRAFT

The Trauma Symptom Inventory (TSI), a test intended for use in the evaluation or detection of acute and chronic traumatic symptomatology. T scores are used to interpret the respondent's level of symptomatology on the TSI. Higher raw scores and higher T scores indicate greater degrees of symptomatology. For all TSI clinical scales, T scores at or above 65 are considered clinically significant. Mr. Castillo's profile does not reflect any scores above a T-Score of 57; all of the scores were within normal limits.

Mr. Castillo's projective measures (Projective Drawings, Sentence Completion Tests and Feelings Inventory) reflects his overall pre-occupation with thoughts of his wife and children, a desire to be and remain close to them and a general sensitivity to their difficulties and distress. His drawings reflect significant artistic skills and talent. The drawings particularly reflected contemplative effort in completing the tasks. These measures did not reflect marked mental illness or distress.

With respect to his Sanity at the time of the conduct alleged, Mr. Castillo reported that the charges stemmed from events on 12-03-03, which resulted in the death of Tommy Garcia, by being shot with a deadly weapon, a firearm, during the course of a robbery. He relates that he has known Francisco Gonzales for a period, but had known Debra Espinosa only a short while. He provided a detailed account of the events and his activities from before the shooting through events of days following the shooting leading to his arrest. He reports that he was not under significant mental distress at the time nor was he experiencing symptoms of mental disease or defect at the time. He reports he was not incapacitated through the voluntary use of alcohol or other substances. He relates that he knows now and knew at the time of the alleged conduct that robbery and intentionally causing the death of someone are criminal acts and that such conduct causing such events is wrong.

DRAFT

DRAFT

Further, there is no indication that he has had or was experiencing a mental illness at the time, nor is experiencing such mental disease or defect at this time. It is my opinion that Mr. Juan Castillo was not insane at the time of the conduct charged.

Respectfully submitted,

_____

Jack G. Ferrell, Jr., Ph.D.
Clinical Psychologist

JGF/mm
cc:    file

DRAFT

5

**ATTORNEY'S FEES EXPENSE CLAIM FORM - DISTRICT COURT, BEXAR COUNTY REV'D 09/04**

**PERSONAL INFORMATION**

1. NAME AND MAILING ADDRESS: _____ (Number) _____ (Street) _____ (City) _____ (State) _____ (Zip)

2. SOCIAL SECURITY NUMBER: _____   4. TELEPHONE NUMBER: _____   4. STATE BAR NUMBER: _____

5. DISTRICT COURT: _____   6. PERSON REPRESENTED AND SID: _____   7. CAUSE NO(S): _____

8. OFFENSE(S) CHARGED: _____   9. OFFENSE DATE: _____

10. PROCEEDING AND DISPOSITION (DESCRIBE BRIEFLY): _____

**CLAIM FOR SERVICES AND EXPENSES**

11. Payment Category
- □ Capital
- □ First Degree
- □ Second Degree
- □ Third Degree, SJF
- □ 11.071 DP Writ

12. Person Represented
- □ Adult Defendant
- □ Appellee
- □ Appellant

| (Docket cell, Routine Appearance) | NUMBER OF HOURS | HOURLY RATE/FLAT FEE | AMOUNT |
|---|---|---|---|
| **IN COURT APPEARANCE** | | | |
| Court Appearance | | $75 | |
| Evidentiary Hearing (Pre-Trial Hearing, MTRP - Testimony taken) | | Capital $100 / 1st chair $125 / 2nd chair $115 | |
| Trial | | Capital $100 VD $100 Trial $150 / 2nd $90 $140 / 1st, SJF $75 / 2nd $100 / 2nd, SJF $75 / 3rd, SJF $75 | |
| Flat Fees for Pleas | n/a | Capital 1st $3500 2nd $2500 / 1st $750 / 2nd $500 / 3rd, SJF $400 / 3rd, SJF $175 | |
| Flat Fees for MTR's | n/a | 1st $300 2nd $125 / 1st $300 | |
| **OUT OF COURT SERVICES** | NUMBER OF HOURS | HOURLY RATE | AMOUNT |
| Initial Jail Visit (one time only payment) | n/a | $100 (FLAT FEE) | |
| Appeals and PDRs | n/a | Capital $80 / 1st $75 / 2nd $60 / 3rd, SJF $50 | |
| **OTHER** | | | |
| Capital - 100 hrs | | Capital 1st $150 hr / 1i $200 hr | Other felonies 1st $75 hr / 2nd $60 hr / 3rd, SJF $50 hr / 1i $150 hr |
| Not to exceed Capital - $15,000 Other felonies - $6,500 Without prior court approval | | | |

1. _____ Attorney at Law, swear that having been duly appointed, I personally represented the above-named defendant and that the foregoing facts are true and correct. I further swear o affirm that I have not received (nor will receive) any money or anything else of value for representing the accused, except as approved by the Court in writing.

**[CERTIFICATION]**

Investigator fees. Attach a copy of order approving appointment. Need prior approval to exceed the following maximums:
Capital - $1500.00    1st - $750   2nd - $500   3rd, SJF - $300

TOTAL $ 2,605.00

SWORN AND SUBSCRIBED before me, this the _____ day of _____, 20 ___.

_____ Attorney Signature

APPROVED in the total amount of $ _____.

_____ Clerk/Coordinator of the Court

_____ Comments: _____

_____ Judge Presiding

* In the event of a dispute this voucher may be submitted to a peer review committee for resolution.



**JACK G. FERRELL, JR., Ph.D.**
**Clinical & Forensic Psychologist**
**INDEPENDENCE PLAZA**

Bill For:
JUAN CASTILLO

Bill To:
ATTORNEY AT LAW VINCENT CALLAGHAN

Bill as of:  Apr 21, 2005

| Date | Transaction | Session Charge | Total Owed |
|------|------------|---------------|-----------|
| | Previous Balance | | $0.00 |
| 10/6/2004 | T/C W/ ATTORNEY .25 HOURS | $50.00 | $50.00 |
| 10/13/2004 | FEELINGS | $37.50 | $37.50 |
| 10/26/2004 | PROJECTIVE DRAWINGS | $37.50 | $37.50 |
| 10/26/2004 | SENTENCE COMPLETION | $37.50 | $37.50 |
| 10/26/2004 | MMPI-2 | $150.00 | $150.00 |
| 10/26/2004 | MCMI III | $150.00 | $150.00 |
| 10/26/2004 | TRAVEL / REVIEW .75 | $112.50 | $112.50 |
| 10/26/2004 | T/C W/ ATTORNEY .25 HOURS | $50.00 | $50.00 |
| 10/26/2004 | TB - TRAUMA STRESS INDEX | $75.00 | $75.00 |
| 11/19/2004 | INTERVIEW 1 HR. (PRR) | $200.00 | $200.00 |
| 11/19/2004 | TRAVEL 1.0 HOURS | $150.00 | $150.00 |
| 11/22/2004 | T/C W/ ATTORNEY .25 HOURS | $50.00 | $50.00 |
| 1/5/2005 | INTERVIEW 1.25 HRS. (PRR) | $250.00 | $250.00 |
| 1/5/2005 | TRAVEL & REVIEW .50 | $75.00 | $75.00 |
| 2/15/2005 | REVIEW FILE 1.0 HRS | $150.00 | $150.00 |

**JACK G. FERRELL, JR., Ph.D.**
**Clinical & Forensic Psychologist**

**JACK G. FERRELL, JR., Ph.D.**
Clinical & Forensic Psychologist
INDEPENDENCE PLAZA

Bill For:
JUAN CASTILLO

Bill To:
ATTORNEY AT LAW VINCENT CALLAGHAN

Bill as of:    Apr 21, 2005

| Date | Transaction | Session Charge | Total Owed |
|---|---|---|---|
| 3/16/2005 | STAFF FILE WORK 1.0 HR | $50.00 | $50.00 |
| 3/14/2005 | REPORT 1.5 | $300.00 | $300.00 |
| 3/16/2005 | STAFF ASSISTANCE 1.0 HRS | $80.00 | $80.00 |
| 3/23/2005 | WECHSLER ADULT INTELLIGE | $450.00 | $450.00 |
| 3/23/2005 | TESTING | $150.00 | $150.00 |
| | | $2,605.00 | $2,605.00 |

Please Pay this Amount:   $2,605.00

Payment for services by credit card is now available. Payment by phone is so
convenient!

**JACK G. FERRELL, JR., Ph.D.**
Clinical & Forensic Psychologist

APR-20-2005 WED 04:39 PM                                                        P. 001

# Jack G. Ferrell Jr., Ph. D.



**DATE:** April 20, 2005

**FROM:** Jack G. Ferrell, Jr., Ph.D.

**PHONE:**

**FAX:**

**TO:** Vincent Callaghan

**PHONE:**

**FAX:**

**PAGES:** (including cover sheet)

**RE:** Balance on account

## Comments:

Please submit for payment

Yvonne Minica

The documents accompanying this facsimile transmission contain confidential information that is legally privileged. The information is intended for the use of the recipient named above. If you receive this transmission in error, please immediately notify us by telephone to arrange for the return of the original documents to us. You are notified that any disclosure, reproduction or distribution for the taking of any action in reliance on the contents of this facsimile information is strictly prohibited.

NO. 2004-CR-1461

| STATE OF TEXAS, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| VS. | § | 186TH JUDICIAL DISTRICT |
| | § | |
| JUAN CASTILLO, | § | |
| Defendant | § | BEXAR COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR APPOINTMENT OF MENTAL HEALTH EXPERT TO DETERMINE COMPETENCY, MENTAL ILLNESS, MENTAL RETARDATION AND/OR SANITY

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes above named defendant, through undersigned court appointed counsel, pursuant to Art. 46.02 § 3(a), Tex. Code of Crim. Proc., on grounds that undersigned counsel has reason to believe that the defendant has continuously experienced black out spells lasting several minutes since 1991 and may be mentally ill or mentally retarded, to request that this Court enter an order appointing the local mental health or mental retardation authority to examine the defendant with regard to his competency to stand trial, his mental illness, his mental retardation, and/or his sanity.

1

2004CE146(A

Respectfully Submitted:



VINCENT D. CALLAHAN

Court Appointed Attorney for Appellant

STATE OF TEXAS      §
                    §      **AFFIDAVIT**
COUNTY OF BEXAR     §

I, VINCENT D. CALLAHAN, do hereby swear that the above and
foregoing Defendant's Motion for Appointment of Mental Health Expert to
Determine Competency, Mental Illness, Mental Retardation and/or Sanity is
true and correct.

Signed this 5th day of Mar, 2004

VINCENT D. CALLAHAN

SUBSCRIBED AND SWORN to before me by VINCENT D.
CALLAHAN on this the 15th day of March, 2004.

CORINE CASAS
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 01-05-2008

Notary Public, State of Texas
Printed Name: _____
My Commission Expires: _____

2

2/4/2004 3:23 PM  FROM: FAX   TO: 210-737-3404   FAXS: 003 OF 005

2004 CR 14 61A

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Defendant's

Motion for Appointment of Mental Health Expert to Determine

Competency, Mental Illness, Mental Retardation and/or Sanity has been

mailed or hand delivered to the Office of the District Attorney, Bexar

County Justice Center, 300 Dolorosa, San Antonio, TX 78204 on this the

$\frac{5^{th}}{}$ day of ____Mar____, 2004.

VINCENT D. CALLAHAN

## ORDER

On this day came on to be heard the above Defendant's Motion for

Appointment of Mental Health Expert to Determine Competency, Mental

Illness, Mental Retardation, and/or Sanity and said motion is hereby;

(GRANTED)            (DENIED)

SIGNED AND ENTERED this 15 day of March, 2004.

JUDGE PRESIDING

3

ATTORNEY'S FEES EXPENSE CLAIM FORM - DISTRICT COURT, BEXAR COUNTY REV'D 09/04

**PERSONAL INFORMATION**

1. NAME AND MAILING ADDRESS Vincent D. Callahan (Number) [redacted] (Suite) S.A. (City) TX (State) 78212 (Zip)

2. SOCIAL SECURITY NUMBER [redacted] 3. TELEPHONE NUMBER [redacted] 4. STATE BAR NUMBER [redacted]

5. DISTRICT COURT 186th 6. PERSON REPRESENTED AND SID Juan Castillo 7. CAUSE NO(S): 2004-CR-1441-A

8. OFFENSE(S) CHARGED: Capital Murder 9. OFFENSE DATE: 2004

10. PROCEEDING AND DISPOSITION (DESCRIBE BRIEFLY): Interim Voucher for Forensic Psychologist, J. G. Ferrell

**CLAIM FOR SERVICES AND EXPENSES**

11. Payment Category ☑ Capital ☐ Second Degree ☐ 11.071 DP Writ ☐ First Degree ☐ Third Degree, SJF

12. Person Represented ☑ Adult Defendant ☐ Appellant ☐ Appellee

| IN COURT APPEARANCE | NUMBER OF HOURS | HOURLY RATE/FLAT FEE | AMOUNT |
|---|---|---|---|
| Court Appearance (Docket call, Routine Appearances) | | $75 | |
| Evidentiary Hearing (Pre Trial Hearing, MTRP - Testimony taken) | | Capital 1st chair - $125, 2nd chair - $115; 1° - $100, 2° - $85, 3°, SJF - $75 | |
| Trial | | Capital VD 1st - $100 Trial - $150, 2nd - $90 - $140; 1° - $125, 2° - $100, 3°, SJF - $75 | |
| Flat Fees for Pleas | n/a | Capital 1st - $3500, 2nd - $2500; 1° - $750, 2° - $500, 3°, SJF - $400 | |
| Flat Fees for MTR's | n/a | 1° - $300 2° - $225 3°, SJF - $175 | |
| **OUT OF COURT SERVICES** | **NUMBER OF HOURS** | **HOURLY RATE** | **AMOUNT** |
| Initial Jail Visit (one time only payment) | n/a | $100 (FLAT FEE) | |
| Not to exceed: Capital - 100 hrs, Other felonies - 30 hrs, Without prior court approval | | Capital - $80, 1° - $75, 2° - $60, 3°, SJF - $50 | |
| **OTHER** | | | |
| Appeals and PDRs Not to exceed Capital - $15,000 Other felonies - $6,500 | | Capital o/c - $150 hr, i/c - $200 hr; Other felonies o/c 1° - $75 hr, 2° - $60 hr, 3°, SJF - $50 hr, i/c - $150 hr | |
| ✓ Investigator fees. Attach a copy of order approving appointment. Need prior approval to exceed the following maximums: Capital - $1500.00 1° - $750 2° - $500 3°, SJF - $300 | | (Psychologist) | $2,605.00 |

TOTAL $ 2,605.00

**[CERTIFICATION]**

I, Vincent D. Callahan Attorney at Law, swear that having been duly appointed, I personally represented the above-named defendant and that the foregoing facts are true and correct. I further swear affirm that I have not received nor will receive any money or anything else of value for representing the accused, except as approved by the Court in writing.

Vincent D. Callahan 4-25-05
Attorney Signature

SWORN AND SUBSCRIBED before me, this the 25th day of April, 20 05.

Lou Michaels
Clerk/Coordinator of the Court

APPROVED in the total amount of $ 2605.00. Comments: ________

Maria Teresa Herr
Judge Presiding

* In the event of a dispute this voucher may be submitted to a peer review committee for resolution.

**JACK G. FERRELL, JR., Ph.D.**
Clinical & Forensic Psychologist
INDEPENDENCE PLAZA

Bill For:
JUAN CASTILLO

Bill To:
ATTORNEY AT LAW VINCENT CALLAHAN

Bill as of:   Apr 24, 2005

| Date | Transaction | Session Charge | Total Owed |
|---|---|---|---|
| | Previous Balance | | $0.00 |
| 10/6/2004 | T/C W/ ATTORNEY .25 HOURS | $50.00 | $50.00 |
| 10/13/2004 | FEELINGS | $37.50 | $37.50 |
| 10/26/2004 | PROJECTIVE DRAWINGS | $37.50 | $37.50 |
| 10/26/2004 | SENTENCE COMPLETION | $37.50 | $37.50 |
| 10/26/2004 | MMPI-2 | $150.00 | $150.00 |
| 10/26/2004 | MCMI III | $150.00 | $150.00 |
| 10/26/2004 | TRAVEL / REVIEW .75 | $112.50 | $112.50 |
| 10/26/2004 | T/C W/ ATTORNEY .25 HOURS | $50.00 | $50.00 |
| 10/26/2004 | TSI-TRAUMA STRESS INDEX | $75.00 | $75.00 |
| 11/19/2004 | INTERVIEW 1 HR. (PRN) | $200.00 | $200.00 |
| 11/19/2004 | TRAVEL 1.0 HOURS | $150.00 | $150.00 |
| 12/22/2004 | T/C W/ ATTORNEY .25 HOURS | $50.00 | $50.00 |
| 1/5/2005 | INTERVIEW 1.25 HRS. (PRN) | $250.00 | $250.00 |
| 1/5/2005 | TRAVEL & REVIEW .50 | $75.00 | $75.00 |
| 2/15/2005 | REVIEW FILE 1.0 HRS | $150.00 | $150.00 |

**JACK G. FERRELL, JR., Ph.D.**
Clinical & Forensic Psychologist

**JACK G. FERRELL, JR., Ph.D.**
**Clinical & Forensic Psychologist**
**INDEPENDENCE PLAZA**

Bill For:
JUAN CASTILLO

Bill To:
ATTORNEY AT LAW VINCENT CALLAGHAN

Bill as of:   Apr 21, 2005

| Date | Transaction | Session Charge | Total Owed |
|---|---|---|---|
| 2/16/2005 | STAFF FILE WORK 1.0 HR | $50.00 | $50.00 |
| 3/14/2005 | REPORT 1.5 | $300.00 | $300.00 |
| 3/16/2005 | STAFF ASSISTANCE 1.0 HRS | $80.00 | $80.00 |
| 3/23/2005 | WECHSLER ADULT INTELIGE | $450.00 | $450.00 |
| 3/23/2005 | TESTING | $150.00 | $150.00 |
| | | $2,605.00 | $2,605.00 |

Please Pay this Amount:   $2,605.00

Payment for services by credit card is now available. Payment by phone is so convenient!

JACK G. FERRELL, JR., Ph.D.
Clinical & Forensic Psychologist

# Jack G. Ferrell, Jr., Ph.D.

**DATE:** April 20, 2005

**TO:** Vincent Callaghan

**PHONE:**

**FAX:**

**FROM:** Jack G. Ferrell, Jr., Ph.D.

**PHONE:**

**FAX:**

**PAGES:** (including cover sheet)

**RE:** Balance on account

## Comments:

Please submit for payment

Yvonne Minica

The documents accompanying this facsimile transmission contain confidential information that is legally privileged. The information is intended for the use of the recipient named above. If you receive this transmission in error, please immediately notify us by telephone to arrange for the return of the original documents to us. You are notified that any disclosure, copying, reproduction or distribution or the taking of any action in reliance on the contents of this facsimile information is strictly prohibited.

VINCENT D. CALLAHAN
ATTORNEY AT LAW

32-61
1110
969701998

DATE 6/16/2005

PAY TO THE
ORDER OF Jack G. Ferrell Jr. Phd.                    $ 2605.00

Two Thousand Six Hundred Five and no/100 ——— DOLLARS

BANKTONE.

MEMO Juan Castillo

Vincent D. Callahan